[No. 45114.   En Banc.   January 5, 1979.]

JOSEPH V. NOVENSON, ET AL, *Appellants,* v. SPOKANE CULVERT & FABRICATING COMPANY, *Respondent.*

*Richter, Wimberley & Ericson, P.S.,* by *William P. Wimberley* and *Gary N. Bloom,* for appellants.

*Stanley D. Moore* and *Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll,* for respondent.

Hicks, J.—This appeal certified to this court from the Court of Appeals, Division Three, involves a claim arising from an industrial accident. The trial court granted defendant's motion for summary judgment. We reverse.

In July 1975, plaintiff/appellant Joseph Novenson moved to the Spokane area from Pennsylvania. He was to begin working as the assistant chaplain at the Whitworth Campus Ministry in September.

On July 24, 1975, Novenson went to the offices of Kelly Labor of Northwest, Inc., in response to a newspaper advertisement for temporary laborers. He sought part–time employment for the 4– to 6–week period prior to assuming his position at Whitworth. Novenson signed the requisite forms at Kelly and was dispatched to a customer of Kelly, defendant/respondent Spokane Culvert and Fabricating Company. He was assigned to work on the "culvert rolling" machine.

The following day, Novenson returned to Kelly and was reassigned to Spokane Culvert at his request. Kelly would issue Novenson a paycheck for each day's work at Spokane Culvert at the hourly rate of $2.10. During his third day of work at Spokane Culvert, both of appellant's hands were drawn into the rollers of the culvert rolling machine and were severely crushed.

As a Kelly employee, Novenson received benefits under the Washington industrial insurance act, RCW Title 51. He

brought this action against Spokane Culvert alleging negligence in failing to: provide a safe workplace; provide safety devices on the culvert rolling machine; properly train and supervise Kelly laborers in the operation of machines; and provide other adequate safety precautions. The trial court granted Spokane Culvert's motion for summary judgment, concluding as a matter of law that appellant was an employee of Spokane Culvert, thus limited in recovery to benefits under the industrial insurance act.

The industrial insurance act declares that all civil actions and causes of action for personal injuries of workmen against their employers are abolished, *except* as otherwise provided in the title. RCW 51.04.010. RCW 51.24.010 provides such an exception, permitting those workmen injured by the negligence of one "not in the same employ" to elect to seek a remedy against the tort–feasor. We note at the outset that in *Lunday v. Department of Labor & Indus.,* 200 Wash. 620, 94 P.2d 744 (1939), the act was so construed as to permit a worker to be concurrently the employee of a general employer and at the same time the employee of a special employer. Without that construction the workman would have been unable to receive benefits under the industrial insurance act. The issue in the present case is whether an employee–employer relationship existed between Novenson and Spokane Culvert. The trial court concluded, as a matter of law, that such a relationship existed. We disagree.

In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom most favorably to the nonmoving party, Joe Novenson. If reasonable persons "might reach different conclusions the motion should be denied." *Balise v. Underwood,* 62 Wn.2d 195, 199, 381 P.2d 966 (1963).

Kelly is in the business of providing casual labor to customers who need temporary workers. Kelly, as an employer, must of course, do all those things every employer is required to do, such as employee reporting, payment of

industrial insurance premiums, internal revenue withholding, and general bookkeeping and accounting concerning these daily laborers. Kelly has an employer number with the Department of Labor and Industries and is a single employer entity for workmen's compensation purposes. Kelly charges its customers, such as Spokane Culvert, for the services of its employees. The fact that such charges include the industrial insurance premiums paid to the Department of Labor and Industries is, we find, of no moment in the present inquiry. The fees charged by any contractor normally cover its costs of doing business and would include such an expense.

Employment with Kelly is on a day–to–day basis. The actual period for which a Kelly employee is paid begins at the time of reporting to the assigned jobsite of the Kelly customer. Since employment is for a day at a time, if the worker wishes a further assignment on the following day, he returns to Kelly to be dispatched, though he is under no obligation to return.

For purposes of workmen's compensation, an employment relationship exists only when: (1) the employer has the right to control the servant's physical conduct in the performance of his duties, and (2) there is consent by the employee to this relationship. *Marsland v. Bullitt Co.,* 71 Wn.2d 343, 428 P.2d 586 (1967); *Fisher v. Seattle,* 62 Wn.2d 800, 384 P.2d 852 (1963). The right of control is not the single determinative factor in Washington. A mutual agreement must exist between the employee and employer to establish an employee–employer relationship. Unlike the rules of vicarious liability at common law which focused on whether the "master" accepted and controlled the activities of the "servant" under the workmen's compensation law, the focus is upon the employee or "servant". The necessity of a mutual agreement was emphasized in *Fisher v. Seattle, supra* at 804–05:

> Under workmen's compensation law, however, the spotlight focuses on the employee, *i.e.,* the servant, rather than on the employer, *i.e.,* the master. The important

question, here, is: Did the workman consent with the "employer" to the status of "employee"? Unlike the common law, compensation law demands that, in order to find an employer–employee relation, a *mutual* agreement must exist between the employer and employee.

Regarding the necessity of such an agreement in cases involving workmen's compensation issues as compared to cases involving issues of vicarious liability, 1 Larson, Workmen's Compensation Law § 47.10 (1952) states:

" . . .

"The reason for the difference between the two concepts is readily explained by the difference between the nature of the two liabilities involved. The end product of a vicarious liability case is not an adjustment of rights between employer and employee on the strength of their mutual arrangement, but a unilateral liability of the master to a stranger. The sole concern of the vicarious liability rule, then, is with the master: did he accept and control the service that led to the stranger's injury? If he did, it is of no particular importance between him and the stranger whether the servant enjoyed any reciprocal or contractual rights *vis–a–vis* the master. Accordingly, the Restatement of Agency says plainly that the master must consent to the service, but nowhere requires that the servant consent to serve the master or even know who he is.

"Compensation law, however, is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employer, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common–law damages. . . ."

When the party asserting the existence of an implied employment relation is not an employee seeking statutory compensation, but an employer seeking a defense to a common–law suit, different social values are at stake. In the

former situation, if an employment agreement is established, moderate statutory benefits are available to the injured worker; however, reaching such a conclusion in the second situation results in the destruction of valuable common–law rights to the injured workman. 1B A. Larson, *Workmen's Compensation Law* §§ 47.42(a), 48.10 (1978). Consent to an employment agreement with Spokane Culvert should not be imputed to Novenson as a matter of law; material factual questions exist regarding the plaintiff's consent to enter a contract of hire. The contractual agreement entered by Kelly and Spokane Culvert mentions no contract between Novenson and Spokane Culvert. As a Kelly day–to–day laborer, Novenson engaged in a conversation with a permanent employee of Spokane Culvert regarding the possibility of employment with the company. The trier of fact at trial is the one to draw any inferences as to Novenson's understanding and consent vis–a–vis an employment relationship with Spokane Culvert.

For whatever reason, Spokane Culvert found it advantageous to contract with Kelly to provide it with temporary workers. As opposed to permanent employees of Spokane Culvert, Kelly laborers were not placed on its payroll, nor were they eligible for company benefits. Spokane Culvert seeks the best of two worlds—minimum wage laborers not on its payroll, and also protection under the workmen's compensation act as though such laborers were its own employees. Having chosen to garner the benefits of conducting business in this manner, it is not unreasonable to require Spokane Culvert to assume the burdens. A potential burden, in this instance, may well be the application of RCW 51.24.010, which permits a common–law action for negligence.

Reversed and remanded.

WRIGHT, C.J., and ROSELLINI, HAMILTON, and BRACHTENBACH, JJ., concur.

DOLLIVER, J. (dissenting)—As the majority states, "In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom most favorably to the nonmoving party, Joe Novenson. If reasonable persons 'might reach different conclusions the motion should be denied.' *Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963)."

On the two-pronged test to determine whether an employment relationship exists, the majority apparently concedes the defendant had the right to control plaintiff's conduct in the performance of his duties but argues there is a factual question whether reasonable persons might reach different conclusions as to whether plaintiff consented to this relationship.

From this material evidence at hand, were there any reasonable inferences to be drawn other than that plaintiff consented to the employer–employee relationship? The response of the majority is: (1) A homily on the iniquity of defendant for hiring through a labor broker, which seems at worst an argument ad hominem and at best an argument properly settled by the legislature; and (2) the allegation that certain material factual questions exist regarding plaintiff's consent. On this latter point, the majority says,

> The contractual agreement entered by Kelly and Spokane Culvert mentions no contract between Novenson and Spokane Culvert. As a Kelly day–to–day laborer, Novenson engaged in a conversation with a permanent employee of Spokane Culvert regarding the possibility of employment with the company. The trier of fact at trial is the one to draw any inferences as to Novenson's understanding and consent vis–a–vis an employment relationship with Spokane Culvert.

If this were all the trial court had to review in determining consent or inferences as to consent, the majority might have a case.

The facts, however, are somewhat more complete than simply the agreement between Kelly and defendant and the conversation cited by the majority. The undisputed facts

established by the deposition of plaintiff and properly considered by the trial court on the summary judgment motion under CR 56(c) are: (1) Plaintiff had previously worked through a labor broker in another city and was familiar with the labor broker method of assigning workers to customer's facilities; (2) he understood his superior at Spokane Culvert was an employee of that business and not of Kelly; (3) on the mornings of both his second and his third days of work, plaintiff specifically requested Kelly to assign him to Spokane Culvert for work; (4) while at defendant's facilities, no Kelly employee in a supervisory capacity at any level looked after or determined anything regarding plaintiff's work; (5) the only supervision or direction given plaintiff came from two employees of Spokane Culvert, the foreman and a machine operator; and (6) Spokane Culvert's supervision directed plaintiff not only as to the machine on which he was to work, but also to the function which he was to perform.

When Novenson accepted the assignment from Kelly, he was aware he would be working at Spokane Culvert's facilities under its direction. His prior familiarity with the arrangements made by labor brokers put him on notice as to his relationship to Kelly and to Spokane Culvert. Even if it might be argued plaintiff did not fully appreciate this relationship when he first appeared at Kelly, his request on the second and third days to be reassigned to Spokane Culvert removes any inference that he did not consent to work there under the defendant's supervision. From the facts before the court and the inferences drawn from the facts, it can be concluded only that the element of consent was fulfilled. Plaintiff's argument to the trial court that he worked for Spokane Culvert only "in a spirit of cooperation with the dictates of his employer, KELLY LABOR, who had ordered him to report to defendant to perform services" is both disingenuous and completely at odds both with the facts before us and the inferences to be drawn therefrom.

The reality in this case is that the triangular relationship involving plaintiff, defendant and Kelly is an instance of a

single employee with two employers. "When such an employee is injured in the course of extrahazardous employment, he is a *workman* in contemplation of the workmen's compensation act, upon the theory that he is an employee of either one or both of the employers." *Lunday v. Department of Labor & Indus.*, 200 Wash. 620, 624, 94 P.2d 744 (1939).

One final observation: The majority cites no authority upholding its position on a set of facts such as this involving a labor broker, an employer and an employee. This is not remarkable in that neither the parties to this lawsuit nor independent research has revealed such authority. In contrast, there are numerous cases where summary judgment was granted in similar circumstances: *Chickachop v. Manpower, Inc.*, 84 N.J. Super. 129, 201 A.2d 90 (1964); *Daniels v. MacGregor Co.*, 2 Ohio St. 2d 89, 206 N.E.2d 554 (1965); *Hamilton v. Shell Oil Co.*, 233 So. 2d 179 (Fla. Dist. Ct. App. 1970); *Renfroe v. Higgins Rack Coating & Mfg. Co.*, 17 Mich. App. 259, 169 N.W.2d 326 (1969); *St. Claire v. Minnesota Harbor Serv., Inc.*, 211 F. Supp. 521 (D. Minn. 1962); and *Wright v. Habco, Inc.*, 419 S.W.2d 34 (Mo. 1967).

While this court need not follow the guide of other states (*see Eagan v. Spellman*, 90 Wn.2d 248, 581 P.2d 1038 (1978)), we ought at least to discuss the arguments raised. The majority has not even attempted to do so.

Plaintiff does not have the facts to support his case. His own depositions and the reasonable inferences drawn therefrom show plaintiff consented to the employment relationship with defendant. The trial court performed its duty under our rules and told him so. We should do the same. I would affirm the trial court.

STAFFORD, UTTER, and HOROWITZ, JJ., concur with DOLLIVER, J.

Reconsideration denied March 14, 1979.