[No. 24708-9-II. Division Two. June 30, 2000.]

SCOTT R. SONNERS, INC., *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

---

*Bradley L. Fisher* and *Philip W. Clements* (of *Davis Wright Tremaine*), for appellant.

*Christine O. Gregoire, Attorney General*, and *James S. Johnson, Assistant*, for respondent.

BRIDGEWATER, J. — Scott R. Sonners, Inc. d.b.a. Interwest Insulation appeals the superior court's decision to affirm the Board of Industrial Insurance Appeals' decision that found Interwest, as the employer, owed industrial insurance premiums to the Department of Labor and Industries. We are asked to decide whether an employer whose entire workforce is leased from a leasing company must pay premiums. We hold that despite the wording of the contract, Sonners/Interwest still retained control of the workforce

and is responsible for industrial insurance coverage. We affirm.

Scott Sonners is the sole shareholder of Interwest Insulation (Interwest). Beginning on December 1, 1994, Interwest began leasing its entire workforce from Barrett Business Services, Inc. (Barrett). Interwest wanted to lease its employees from Barrett because it wanted assistance with drug testing its employees and complying with Washington employment regulations, including employee paperwork, unemployment compensation, and safety requirements. At the beginning of this lease, Barrett hired almost all of Interwest's current employees and then leased the employees back to Interwest. Even Sonners, who was the sole shareholder of Interwest, was hired through Barrett as the manager for Interwest.

According to the employee leasing agreement, Barrett and Interwest intended to enter into a joint employer relationship with respect to the employees covered by the lease. The leasing agreement purported to make the workers, whom Barrett leased to Interwest, employees of Barrett for some purposes, employees of Interwest for other purposes, and employees of both for yet other purposes.

For example, the employee leasing agreement stated:

- that the workers would be employees of *Barrett* for purposes of "compliance with applicable workers' compensation [laws] including, but not limited to, (i) procuring workers' compensation insurance or providing workers' compensation self-insurance," and that Barrett would be the employer for the "retention of direction and control over the Employees, including hire, discipline, and fire;"

- that *Interwest* was the employer for the purpose of compliance with workplace safety laws;

- that *Interwest and Barrett* would be joint employers for the purpose of "compliance with workers' compensation law[.]"

The lease also provided that Interwest, as the client, agreed that it "shall do all acts and comply with all workers' compensation laws and related laws that will allow Barrett

to provide self-insurance workers' compensation to the employees of Client, all of whom shall be leased from Barrett[.]"

The Department of Labor and Industries (Department) audited Interwest, determined that the Interwest workers were employees of Interwest, and assessed Interwest $38,453.02 in industrial insurance premiums for the fourth quarter of 1994 and the first quarter of 1995. Interwest appealed the assessment to the Board of Industrial Insurance Appeals. An administrative law judge (ALJ) ultimately determined that the workers were employees of Interwest reportable to the State. The Board affirmed the Proposed Decision and Order of August 1, 1997. On appeal, the Thurston County Superior Court affirmed the Board's decision.

Sonners contends that the Board incorrectly determined that his company, Interwest, owed industrial insurance premiums. Sonners challenges the Board's assessment on several grounds, that the Board's decision: (1) erroneously interpreted or applied the law; (2) was not supported by substantial evidence; (3) did not decide whether Barrett was an employer; and (4) is inconsistent with Department regulations. The Department submits that the Board correctly interpreted and applied the law and that substantial evidence supports its findings that Interwest, not Barrett, was the employer for the purposes of industrial insurance.

The Administrative Procedures Act (APA) governs judicial review of the Board's decision in an assessment case. RCW 51.48.131. Review is of the agency record rather than the trial court record. *See Jefferson County v. Seattle Yacht Club*, 73 Wn. App. 576, 588, 870 P.2d 987, *review denied*, 124 Wn.2d 1029 (1994). The Board's findings of fact are reviewed for substantial evidence, sufficient to persuade a fair-minded person of the declared premise. *Towle v. Department of Fish & Wildlife*, 94 Wn. App. 196, 204, 971 P.2d 591 (1999); *Diehl v. Mason County*, 94 Wn. App. 645, 652, 972 P.2d 543 (1999); *see* RCW 34.05.570(3)(e). We review the Board's legal conclusions de novo, but we give

substantial weight to the agency's interpretation when the subject area falls within the agency's area of expertise. *Towle*, 94 Wn. App. at 204; *Diehl*, 94 Wn. App. at 652; *Hamel v. Employment Sec. Dep't*, 93 Wn. App. 140, 144-45, 966 P.2d 1282 (1998), *review denied*, 137 Wn.2d 1036 (1999). The employer challenging the validity of the agency action bears the burden of proof before the Board to show that the premiums were assessed incorrectly. RCW 34.05.570(1)(a); *Jamison v. Department of Labor & Indus.*, 65 Wn. App. 125, 133, 827 P.2d 1085 (1992).

## "Employer" for Purposes of Industrial Insurance

The obligations of an employer in industrial insurance law are set forth in RCW 51.14.010:

**Duty to secure payment of compensation-Options.** Every employer under this title shall secure the payment of compensation under this title by:

(1) Insuring and keeping insured the payment of such benefits with the state fund; or

(2) Qualifying as a self-insurer under this title.

The first question we must address is who the employer is for the purposes of RCW 51.14.010. In other words, who is the employer who must provide industrial insurance coverage. Based on this statute, if Interwest is an "employer" recognized the purposes of Title 51 RCW, the inquiry ends and Sonners is required to pay the industrial insurance premiums.

■ RCW 51.16.060 requires "[e]very employer not qualifying as a self-insurer, shall insure with the state[.]" RCW 51.04.060 provides in part that "[n]o employer . . . shall exempt [itself] from the burden . . . of [the Industrial Insurance Act] by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void." The Washington Supreme Court has held "[f]or purposes of workmen's compensation, an employment relationship exists only when: (1) the employer has the right to control the servant's physical conduct in the

performance of his duties, and (2) there is consent by the employee to this relationship." *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 553, 588 P.2d 1174 (1979) (citations omitted).

■ Interwest correctly points out that an employee may have two employers for purposes of industrial insurance coverage. *Lunday v. Department of Labor & Indus.*, 200 Wash. 620, 94 P.2d 744 (1939); *Carroll v. Universal Irrigation, Inc.*, 18 Wn. App. 854, 573 P.2d 373 (1977). Under *Novenson*, in order for a dual employment relationship to exist, both employers must have the right to control the worker's physical conduct and the worker must consent to the employer/employee relationship.

The Department submits that the Board properly found Interwest was the employer in this case. Although Sonners assigned error to the Board's finding that Interwest was an employer who owed industrial insurance premiums, Sonners agrees that Interwest is an employer. Thus, there is no dispute over the Board's conclusion that Interwest was an employer. Even though Sonners concedes that Interwest is the employer, he contends that Barrett, and not Sonners, is responsible for industrial insurance coverage.

A. Board's Findings Regarding Barrett

■ While the parties do not dispute Interwest's status as an employer, the parties strongly dispute whether Barrett was an employer. In fact, the parties dispute whether the Board even reached the issue of Barrett's employer status. The Department submits that the Board found Barrett did not have control or consent of the employees, and thus concluded that Barrett was not an employer. Sonners argues that the Board did not make a required specific factual finding regarding Barrett's status as an employer or as an employee leasing company. Sonners is incorrect in asserting that the Board had to enter a negative finding that Barrett was not an employer. The trier of fact is not required to enter negative findings or to find that a certain fact has not been established. *Hering v. Department of Motor Vehicles*, 13 Wn. App. 190, 192, 534 P.2d 143 (1975).

■ A review of the Board's decision reveals that the Board concluded Barrett did not qualify as an employer under either the control or consent prongs of *Novenson*, 91 Wn.2d 550. First, the Board made a specific factual finding that the previous employees of Interwest did not consent to be employees of Barrett.[1] Second, although the Board did not state in its findings of fact or conclusions of law that Barrett did not have control over the employees' physical conduct, such a finding is evident in the body of the written decisions of the Board and the ALJ. Where findings of fact are incomplete or defective, the reviewing court may refer to the memorandum decision of the trial court. *Bowman v. Webster*, 42 Wn.2d 129, 135, 253 P.2d 934 (1953). In its decision, the Board affirmed the ALJ's Proposed Decision and Order of August 1, 1997.[2] In holding that Interwest remained the employer of its workers for industrial insurance purposes, the ALJ specifically stated that:

> Under *Novenson*, in order for a dual employment relationship to exist, both employers must have the right to control the worker's activity and the worker must consent to the employer/employee relationship. This is a factual determination.
>
> . . . .
>
> The factual question is whether Barrett exercised such control over the Interwest workers that it should be viewed as the primary employer for industrial insurance purposes.
>
> The record is persuasive that during the audit period at issue in this appeal, Interwest remained the employer of its workers for industrial insurance purposes. Barrett executed no control over the work done by Interwest workers. Barrett had no interest in the qualifications of Interwest workers to perform their job functions. Neither did the level of financial

---

[1] Finding of Fact 7 states: "[W]orkers who were employees of Interwest Insulation prior to [the date of the lease agreement] did not consent to be employees of Barrett Business Services, Inc."

[2] In affirming the Proposed Decision and Order August 1, 1997, the Board stated that it "granted review for the limited purpose of clarifying the directive to the Department regarding the classification of work performed by Art Carlson. Otherwise, we agree with the outcome of the Proposed Decision and Order[.]" Thus, the Board issued its decision to clarify Carlson's work classification, which is not at issue in this appeal, and simply affirmed the ALJ's decision.

success of Barrett depend upon the quality of work done by Interwest workers. As the sole shareholder, Scott Sonners had the primary economic benefit of the work done by the firm. Mr. Sonners set the hours and pay of his workers, bid for all projects using his long standing contractor number and executed contracts under the name of Interwest. All indicia of who had control of the workers points [sic] to Mr. Sonners.

We hold that the ALJ and the Board correctly found that Barrett did not retain a right of control sufficient to establish an employment relationship under *Novenson*, 91 Wn.2d 550.

### B. Substantial Evidence

■ As the superior court noted, although the evidence in this case was conflicting, depending on the perspective of the witness testifying, the task of a court considering an administrative appeal is not to resolve conflicts but, rather, to test whether the Board's findings of fact are supported by substantial evidence. *See Towle*, 94 Wn. App. at 204; *Diehl*, 94 Wn. App. at 652.

The Department submits that substantial evidence supports the Board's decision that Barrett did not have the required right to control the physical conduct of the workers under the control prong of *Novenson*. The record contains evidence that Interwest, and not Barrett, sent workers to the jobsites, provided the work equipment, materials, and transportation, and directed the work to be done. A clause in the lease states that Interwest would be responsible for the day-to-day supervision and control of the employees regarding the performance of their duties.[3] Also, Sonners set the hours and pay of his workers.

Notably, the record shows that Barrett exercised some control over the workers. For example, Barrett had the workers fill out application forms and take drug tests.

---

[3] The lease provided at paragraph 4.1 that Interwest, as the client, was "responsible for that portion of the day-to-day supervision and control of Employees assigned to Client as is necessary to achieve proper work results and shall determine the general procedures to be followed by the Employees regarding the performance of their duties."

Barrett also conducted some safety training and issued paychecks according to the hours reported to it by Interwest and wages set by Interwest. Barrett's account manager for the Interwest lease admitted that Interwest directed all the workers' physical activities in the performance of their jobs. She stated that Barrett did not care what kind of work the workers were doing, so long as Interwest paid its bills.

There was conflicting evidence of who hired and fired the employees. Although Sonners highlighted the language of the lease which states Barrett's obligation was to hire, fire and discipline the workers, the lease later states in paragraph 2.3(b) that Interwest and Barrett were joint employers for the "implementation of policies and practices . . . such as recruiting, interviewing, testing selection, orientation, training . . . supervising, disciplining, and terminating employees." In practice, the evidence shows that Interwest was responsible for the hiring and firing of employees. Interwest's newspaper ads and signs soliciting workers referred to Interwest, not Barrett, as the employer who was hiring.

Although Barrett had a limited amount of control over these workers, the record reflects that substantial evidence supports the Board's determination that Barrett did not have the right to control the workers' physical conduct in the performance of their duties as required in *Novenson*. Accordingly, because Barrett did not have the requisite control, Barrett was not an employer of the Interwest workers.

Because Barrett was not an employer here, Interwest is the only employer in this case. Thus, we affirm the superior court's and the Board's decision that Interwest was the employer responsible for industrial insurance coverage.

 Despite the Board's findings that Barrett did not have control over the workers, Sonners asserts that if Barrett is not an employer for industrial insurance purposes, then all employee leasing companies and temporary agencies would not be considered employers and would not pay premiums. Sonners contends "[t]he fundamental dis-

agreement between the parties has always been whether workers who are assigned to a client by an employee leasing entity must be separately insured by *both* of their employers." That issue is not before us. We do not give advisory opinions. *Walker v. Munro*, 124 Wn.2d 402, 414, 879 P.2d 920 (1994). Similarly, we do not address the hypothetical of what the result would be if Barrett were a joint employer. The record sufficiently shows that Barrett did not have the right to control the employees' physical conduct at work. The ALJ properly concluded that Barrett was not an employer, and the Board properly affirmed the ALJ's decision. Thus, Interwest was the only employer, and no joint employer question is presented.

Affirmed.

ARMSTRONG, C.J., and HUNT, J., concur.

Review denied at 142 Wn.2d 1008 (2000).