[No. 66013-6-I.   Division One.   March 26, 2012.]

XENITH GROUP, INC., *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

*Robert M. McKenna, Attorney General,* and *Masako Kanazawa, Assistant,* for appellant.

*Joan Lowry Glaser Morgan* (of *Slagle Morgan LLP*), for respondent.

¶1 LEACH, A.C.J. — In Washington, every employer must secure workers' compensation for its workers by insuring with the State or qualifying as a self- insurer.[1] The Department of Labor and Industries (L&I) appeals a superior court judgment reversing an employer premium assessment against Xenith Group Inc. The trial court found that Xenith, a home health care referral service, and its approximately 80 affiliated home care providers did not have the employer-employee relationship required for imposition of this obligation. Because Xenith and the care providers fall within the plain language of the applicable statutory definitions for "employer"[2] and "worker,"[3] respectively, we reverse the trial court and remand for entry of judgment in favor of L&I.

## FACTS

¶2 Xenith Group was a home health care referral agency that contracted with the Department of Social and Health Services (DSHS) to provide home care services to developmentally disabled adults.[4] DSHS identified qualified pa-

---

[1] RCW 51.14.010.

[2] RCW 51.08.070.

[3] RCW 51.08.180.

[4] In January 2007, DSHS decided to no longer contract with providers or referral companies using an independent contractor model. In response to this change, Xenith Group's owner, Brad Petersen, closed Xenith and formed Zenith Services Inc., hiring affiliated care providers as employees. While Zenith Services continued to provide home care to DSHS-qualified developmentally disabled adults, the practices of that separate corporate entity are not relevant to the L&I assessment against Xenith Group.

tients to Xenith, which then referred patients to one of approximately 80 home care providers affiliated with Xenith. Each of Xenith's care providers signed forms that stated, "I am not an employee of Xenith Group Inc." The documents described the providers as independent contractors and informed them they were responsible for maintaining their own tax and business records. Care providers reported their hours worked to Xenith, which then submitted time sheets to DSHS. DSHS paid Xenith a rate of $15 for each hour reported. Xenith paid its care providers $10 per hour and retained the remainder of the DSHS payment as payment for its services.

¶3 In 2006, L&I received a workers' compensation claim from an injured home care provider who identified Xenith as her employer. L&I discovered that Xenith did not have a workers' compensation account and had paid no premiums. It audited Xenith. Based on that audit, L&I assessed premiums, interest, and penalties against Xenith for the last quarter of 2005, all four quarters of 2006, and the first quarter of 2007. Xenith appealed the assessment to the Board of Industrial Insurance Appeals (Board).

¶4 At a hearing before an industrial appeals judge (IAJ), Xenith's owner, Brad Petersen, testified that the care providers were responsible for maintaining their own books and records and for paying their own taxes and that he had no control over their work performance. Petersen also testified that he had no ability to discipline or fire providers for misconduct. All Xenith providers signed paperwork that clearly stated they were independent contractors, not employees.

¶5 The IAJ recommended reversing the assessment. The Board rejected the recommendation and instead determined that the care providers qualified as workers under RCW 51.08.180 because they were independent contractors engaged in contracts whose essence was their personal labor. The Board further found that Xenith failed to prove the care providers met the six-part exception to the statu-

tory definition.[5] Xenith appealed the Board's order and assessment to the superior court, which found no covered relationship and reversed the assessment. L&I appeals the superior court's decision.

## STANDARD OF REVIEW

¶6 When reviewing an agency's decision, we sit in the same position as the superior court[6] and apply the review standards set forth in the Washington Administrative Procedure Act, chapter 34.05 RCW.[7] We limit our review to the record of the administrative tribunal, not that of the trial court.[8] This act requires relief from an agency order when the administrative agency erroneously interprets or applies the law,[9] the order is not supported by substantial evidence,[10] or the order is arbitrary or capricious.[11]

¶7 We review the agency's findings of fact under a substantial evidence standard.[12] Substantial evidence supports the agency's findings when the record contains "evidence sufficient to persuade a fair-minded, rational person of the truth of the matter."[13] We review an agency's interpretation of a statute or regulation as a question of law de

---

[5] *See* RCW 51.08.195.

[6] *D.W. Close Co. v. Dep't of Labor & Indus.*, 143 Wn. App. 118, 125, 177 P.3d 143 (2008).

[7] *See Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000).

[8] *Renton Educ. Ass'n v. Pub. Emp't Relations Comm'n*, 101 Wn.2d 435, 440, 680 P.2d 40 (1984).

[9] RCW 34.05.570(3)(d).

[10] RCW 34.05.570(3)(e).

[11] RCW 34.05.570(3)(i).

[12] RCW 34.05.570(3)(e).

[13] *R&G Probst v. Dep't of Labor & Indus.*, 121 Wn. App. 288, 293, 88 P.3d 413 (2004).

novo.[14] When reviewing questions of law, we may substitute our determination for that of the agency.[15] When an administrative decision involves a mixed question of law and fact, "the court does not try the facts de novo but it determines the law independently of the agency's decision and applies it to facts as found by the agency."[16]

## ANALYSIS

¶8 Xenith primarily contends that the Industrial Insurance Act (IIA)[17] definitions of "employer" and "worker," as applicable to independent contractors, "do not come into play unless and until the existence of a work relationship involving control by an employer and clear consent to employment by an individual has been demonstrated." Xenith relies upon *Bennerstrom v. Department of Labor & Industries*[18] to support this contention. Based upon the plain language of the applicable statutes, we disagree.

¶9 The common law developed a distinction between employees and independent contractors that limits a principal's vicarious liability for the misconduct of a person rendering service to the principal.[19] To effect the sweeping purpose of the state's workers' compensation scheme,[20] the

---

[14] *D.W. Close Co.*, 143 Wn. App. at 126.

[15] *Postema*, 142 Wn.2d at 77 (citing *R.D. Merrill Co. v. Pollution Control Hearings Bd.*, 137 Wn.2d 118, 142-43, 969 P.2d 458 (1999)).

[16] *Renton Educ. Ass'n*, 101 Wn.2d at 441.

[17] Title 51 RCW.

[18] 120 Wn. App. 853, 86 P.3d 826 (2004).

[19] *Massey v. Tube Art Display, Inc.*, 15 Wn. App. 782, 785-88, 551 P.2d 1387 (1976).

[20] RCW 51.04.010 states,

The common law system governing the remedy of workers against employers for injuries received in employment is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the worker and that little only at large expense to the public. The remedy of the worker has been uncertain, slow and inadequate. Injuries in such

legislature modified this common law for purposes of workers' compensation by specifically and broadly defining the terms "worker" and "employer."[21] A "worker" includes

> every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his or her employment; also *every person* in this state who is engaged in the employment of or *who is working under an independent contract, the essence of which is his or her personal labor for an employer under this title*, whether by way of manual labor or otherwise, in the course of his or her employment.[22]

Similarly, an "employer" includes

> *any person*, body of persons, *corporate or otherwise*, and the legal representatives of a deceased employer, all while engaged in this state in any work covered by the provisions of this title, by way of trade or business, or *who contracts with one or more workers, the essence of which is the personal labor of such worker or workers*.[23]

¶10 The legislature also adopted a six-part test for excluding certain independent contractors from these two definitions:

> As an exception to the definition of "employer" under RCW 51.08.070 and the definition of "worker" under RCW 51.08.180,

---

works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage worker. The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

[21] *Malang v. Dep't of Labor & Indus.*, 139 Wn. App. 677, 687, 162 P.3d 450 (2007).

[22] RCW 51.08.180 (emphasis added).

[23] RCW 51.08.070 (emphasis added).

services performed by an individual for remuneration shall not constitute employment subject to this title if it is shown that:

(1) The individual has been and will continue to be free from control or direction over the performance of the service, both under the contract of service and in fact; and

(2) The service is either outside the usual course of business for which the service is performed, or the service is performed outside all of the places of business of the enterprise for which the service is performed, or the individual is responsible, both under the contract and in fact, for the costs of the principal place of business from which the service is performed; and

(3) The individual is customarily engaged in an independently established trade, occupation, profession, or business, of the same nature as that involved in the contract of service, or the individual has a principal place of business for the business the individual is conducting that is eligible for a business deduction for federal income tax purposes; and

(4) On the effective date of the contract of service, the individual is responsible for filing at the next applicable filing period, both under the contract of service and in fact, a schedule of expenses with the internal revenue service for the type of business the individual is conducting; and

(5) On the effective date of the contract of service, or within a reasonable period after the effective date of the contract, the individual has established an account with the department of revenue, and other state agencies as required by the particular case, for the business the individual is conducting for the payment of all state taxes normally paid by employers and businesses and has registered for and received a unified business identifier number from the state of Washington; and

(6) On the effective date of the contract of service, the individual is maintaining a separate set of books or records that reflect all items of income and expenses of the business which the individual is conducting.[24]

¶11 These statutes reflect a legislative intent to provide workers' compensation coverage for an independent con-

---

[24] RCW 51.08.195.

tractor whose personal labors are the essence of that individual's contract. In addition, the legislature has directed that these statutes "shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment."[25]

¶12 The Board applied these statutes in this case. It found that the essence of the home care providers' contracts was their personal services. It also determined Xenith failed to establish several of the six elements of the test for excluding coverage for certain independent contractors. Based on these factual determinations, the Board found Xenith owed premiums, interest, and penalties. Xenith presents no persuasive argument challenging the sufficiency of the evidence to support these findings. Xenith also presents no argument challenging the Board's analysis of the IIA's independent contractor coverage. Xenith claims this is not necessary because the Board failed to apply a claimed "Title 51 RCW gatekeeper."

¶13 Xenith contends the Board failed to use a mandatory threshold analysis required before any application of the statutory definitions of employer and worker. This asserted threshold test involves two determinations: (1) did the employer exercise the requisite control over the worker and (2) did the worker consent to be an employee. According to Xenith, the Board must answer each of these inquiries in the affirmative before the IIA and its definitions apply. For this argument, Xenith relies almost exclusively upon *Bennerstrom*.

¶14 *Bennerstrom* does not support Xenith's position because it did not address mandatory coverage for independent contractors. The plaintiff, Mr. Bennerstrom, provided home care services to his mother through DSHS. One day, while Mr. Bennerstrom was riding his bicycle on DSHS-related errands, a car struck him. He argued that both

---

[25] RCW 51.12.010.

DSHS and his mother (the patient) were his employers and that DSHS was responsible for workers' compensation payments.[26] This court rejected his argument and referred to Bennerstrom's contract with DSHS, which stated twice that Bennerstrom was not a DSHS employee.[27] We upheld summary judgment because we found Bennerstrom did not demonstrate any issue of material fact about the parties' lack of consent to an employment relationship.

¶15 Xenith relies upon the following statement in *Bennerstrom*: "An employment relationship for purposes of the workers' compensation laws does not exist absent (a) the employer having a right to control the employee's physical conduct in the performance of the employee's duties and (b) the employee's consent to the employment relationship."[28] However, as our Supreme Court noted in *Wilber v. Department of Labor & Industries*,[29]

> "In considering such statements made in the course of judicial reasoning, one must remember that general expressions in every opinion are to be confined to the facts then before the court and are to be limited in their relation to the case then decided and to the points actually involved."

Although *Bennerstrom* and this case both involve coverage for DSHS home care providers, *Bennerstrom* provides no guidance here. We decided *Bennerstrom* based on the complete absence of any evidence to establish consent to the alleged employer-employee relationship. We also questioned the control evidence. But, because Bennerstrom provided no citation to authority, persuasive argument, or analysis to support his independent contractor claim, we

---

[26] *Bennerstrom*, 120 Wn. App. at 858-59.

[27] *Bennerstrom*, 120 Wn. App. at 860.

[28] *Bennerstrom*, 120 Wn. App. at 856.

[29] 61 Wn.2d 439, 445-46, 378 P.2d 684 (1963) (quoting *Peterson v. Hagan*, 56 Wn.2d 48, 53, 351 P.2d 127 (1960)).

expressly declined to consider it.[30] Therefore, the case provides no support to Xenith.

¶16 At the trial court, Xenith also relied upon *Novenson v. Spokane Culvert & Fabricating Co.*[31] In *Novenson*, the plaintiff signed a written employment agreement with Kelly Labor, a temporary staffing agency that sent employees on daily work assignments to client companies, including Spokane Culvert. Kelly contracted with Spokane Culvert, but the plaintiff did not. Kelly dispatched the plaintiff to Spokane Culvert. While working on site, the plaintiff suffered a serious injury and sued Spokane Culvert for negligence. The trial court dismissed the claim, holding that because Spokane Culvert employed the plaintiff, the IIA barred his claim.[32] The Supreme Court reversed, holding that a material issue of fact existed about the plaintiff's consent to an employment relationship with Spokane Culvert. The court expressly distinguished between the situations where establishing an employment relationship would provide a worker with "moderate statutory benefits" and where it would destroy valuable common law rights.[33] " 'To thrust upon a worker an employee status to which he has never consented . . . might well deprive him of . . . the right to sue his own employer for common-law damages.' "[34]

¶17 Notably, *Novenson* did not involve any claim that the plaintiff was an independent contractor. It does not address the IIA's inclusion of certain independent contractors as covered "workers." Thus, *Novenson*'s application of control and consent tests to protect an injured worker's right to sue provides no support for Xenith's claim that these tests

---

[30] *Bennerstrom*, 120 Wn. App. at 866-67.

[31] 91 Wn.2d 550, 588 P.2d 1174 (1979).

[32] *Novenson*, 91 Wn.2d at 552.

[33] *Novenson*, 91 Wn.2d at 552-55.

[34] *Novenson*, 91 Wn.2d at 554 (internal quotation marks omitted) (quoting *Fisher v. City of Seattle*, 62 Wn.2d 800, 805, 384 P.2d 852 (1963)).

supplant the legislature's definitions of "employer" and "worker" in the IIA.

¶18 The IIA clearly states that in the context of workers' compensation, " '[e]mployee' shall have the same meaning as 'worker' when the context would so indicate."[35] Thus, Xenith's argument ignores the plain language of the IIA and conflates the common law and statutory meanings of "employee." Given the legislature's modification of the definitions of "employer" and "worker" to include certain independent contractors and the legislature's direction for liberal construction of the IIA, the circumstances of this case present exactly the situation where the legislature intended that the Board consider the six-part test contained in RCW 51.08.195.

¶19 Additionally, Xenith ignores the rule of statutory construction that requires us to derive the meaning of an unambiguous statute from the statute's plain language.[36] "When the words in a statute are 'clear and unequivocal,' we must assume the legislative body meant exactly what it said and apply the statute as written."[37] Here, the legislature expressed a clear intent to provide workers' compensation coverage not only to employees but also to anyone (1) working under an independent contract, (2) the essence of which is personal labor (3) for an employer.[38]

¶20 Finally, Xenith's proposed threshold test would frustrate the very purpose behind the legislature's broad definitions of "employer" and "worker"—to provide workers' compensation coverage to certain individuals not meeting the common law definition of an "employee." As we have previously recognized, analyzing whether an individual

[35] RCW 51.08.185.

[36] *Sprint Spectrum, LP/Sprint PCS v. City of Seattle*, 131 Wn. App. 339, 346, 127 P.3d 755 (2006).

[37] *Sprint Spectrum*, 131 Wn. App. at 346 (quoting *Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997)).

[38] RCW 51.08.180.

works under an independent contract, the essence of which is that individual's personal labor, involves a different analysis than whether the individual is an employee.

¶21 Xenith also assigns error to L&I's assessment for the first quarter of 2007 because it stopped doing business on January 31, 2007. Because it presents no argument to support this claim, we decline to review it.

¶22 Because Xenith has not prevailed, we deny Xenith's request for attorney fees.

## CONCLUSION

¶23 Sufficient evidence supports the Board's factual findings, and it correctly applied the law. Therefore, we reverse the superior court and remand for entry of a judgment affirming the Board's order.

BECKER and SCHINDLER, JJ., concur.

Reconsideration denied March 26, 2012.