[No. 66403-4-I. Division One. April 9, 2012.]

GARY MERLINO CONSTRUCTION COMPANY, INC., *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.

610

*John Klor* and *William A. Masters* (of *Wallace Klor & Mann PC*), for appellant.

*Peter S. Holmes, City Attorney*, and *Anne E. Vold, Assistant*, for respondent.

*Robert M. McKenna, Attorney General*, and *Steve R. Vinyard, Assistant*, for the Department of Labor and Industries.

¶1 APPELWICK, J. — Seattle Police Officer Danny Allen was injured directing traffic for Gary Merlino Construction Company Inc. The Department of Labor and Industries allowed his workers' compensation claim against the city of Seattle but denied it against Merlino. The Board of Industrial Insurance Appeals and the superior court disagreed, finding that at the time of the injury, Allen was an employee of Merlino but not of the city of Seattle. Because Merlino had the right to control Officer Allen's conduct in the performance of his duties and because Officer Allen consented to his employment with Merlino, we affirm.

## FACTS

¶2 Officer Danny Allen works for the Seattle Police Department (SPD) as an officer. On July 29, 2008, he was working off-duty, providing traffic control for Gary Merlino Construction Company Inc., when he was struck and injured by a car.

¶3 Kathleen Boone-Jakobsen assigned Officer Allen to the job with Merlino. Boone-Jakobsen is a commissioned civilian employee of the SPD, working in the parking enforcement division. She also works outside of her job with the SPD, independently coordinating the assignment of off-duty police officers for contractors seeking uniformed officers to provide traffic control for construction projects. Boone-Jakobsen has never been directed by the SPD to engage in this coordinating activity, and she is not acting on behalf of the SPD or the Seattle Police Guild when she does so. She is compensated by the contractors directly for her service, at the rate of $35 per officer per day. An officer who performs traffic control duty is also compensated directly by the contractor, at the rate of $46 per hour. Boone-Jakobsen has been coordinating off-duty officers in this manner since the mid-1980s. She receives requests from contractors seeking off-duty officers and then coordinates with an SPD officer who is off-duty that day and who has previously indicated interest in doing such work.

¶4 Such off-duty work is obtained at the discretion of the officer and is not required by the SPD. Officers pursuing off-duty work are required to seek prior approval from SPD by filing a secondary work permit. This permit must be approved by a commanding officer. Boone-Jakobsen has never filed a secondary work permit for the coordinating business. Officer Allen did not seek or obtain such a permit related to the work he did on the day of the accident. The SPD thus had no knowledge of Officer Allen's work at the off-duty job.

¶5 Boone-Jakobsen received a request from Merlino to schedule a uniformed police officer to do traffic control at the Merlino construction site on July 29, 2008. Officer Allen agreed to take the job. Merlino was working under a contract with the city of Seattle (City) on a roadway improvement project. Under the contract, Merlino was required to hire flaggers to manage traffic. The *City of Seattle Traffic Control Manual for In-Street Work* provides that flaggers should be used except "[w]hen existing traffic signals are to be countermanded, in which case only a Uniformed Police Officer shall be the flagger." SEATTLE DEP'T OF TRANSP., CITY OF SEATTLE TRAFFIC CONTROL MANUAL FOR IN-STREET WORK 30 (2012) (TCM).[1,2] Officers who perform these traffic control duties wear their police uniform, including a badge, name tag, gun, and marked police department traffic vest.

¶6 James Wiley, the traffic control supervisor at Merlino, testified he was familiar with Boone-Jakobsen and had worked with her before. When Merlino needed to hire a uniformed officer to control traffic, he or a superintendant would indicate to Boone-Jakobsen what hours the officer was needed. On arrival, the uniformed officer would contact Wiley, the superintendant, or a foreman, who would then direct the officer where to proceed. Merlino supervisors determined the work location of officers and the hours they would work. Merlino also paid the officers for their off-duty work.

¶7 On the day of the accident, Officer Allen coordinated with Boone-Jakobsen, and he was scheduled to control traffic at the Merlino work site from 7:00 a.m. to 3:00 p.m. He arrived around 6:00 a.m. and reported to a Merlino work

---

[1] The *City of Seattle Traffic Control Manual for In-Street Work* is authorized by Seattle Municipal Code 11.16.320 and was adopted consistent with that provision. TCM at 3.

[2] The same requirement—that a uniformed officer be used when countermanding a signal—was also contained in the Seattle Pub. Utils., *City of Seattle Standard Plans for Municipal Construction* 1-94 (2008 ed.).

site supervisor, Dan Trudeau. Officer Allen did not punch a time card. He expected Wiley, as the traffic control supervisor, to complete his time card at the end of the day. Officer Allen testified he considered Merlino to be his employer.

¶8 Trudeau assigned Officer Allen to the intersection where he was injured. When work at that intersection was complete, Wiley told Allen that his job there was done and he should take a break. Despite Wiley's instructions, Trudeau then asked Allen to go back into the intersection, to "make sure it doesn't get jammed up" and "to keep it flowing." The accident occurred shortly thereafter. At the time of the accident, the traffic signal was fully functional and Allen was not countermanding it. There were no workers there and no construction vehicles that needed assistance.

¶9 On August 11, 2008, Officer Allen filed an application for benefits, listing both the City and Merlino as his employers. Neither asserted that Officer Allen was an independent contractor. The Department of Labor and Industries (Department) issued an order that allowed the claim to proceed against the City, and it issued an order denying the claim against Merlino, finding that there was no employer-employee relationship. The City appealed that order to the Board of Industrial Insurance Appeals (Board). The Board reversed the Department's order, finding that Officer Allen was an employee of Merlino but not of the City. Merlino then appealed the Board's ruling. The superior court affirmed the Board's decision, finding the record contained substantial evidence to support the conclusion that Merlino was Officer Allen's employer, not the City. The superior court adopted the Board's findings and conclusions as its own. Merlino appeals. The Department joined Merlino in this appeal, arguing that the City was the employer.

## DISCUSSION

I. <u>Standard of Review</u>

██ █ ¶10 RCW 51.52.110 and RCW 51.52.115 govern judicial review of matters arising under the Industrial Insurance Act. RCW 51.52.115 provides that the hearing in the superior court shall be de novo, but based solely on the evidence presented to the Board. The same applies to this court. In reviewing an agency's decision, we sit in the same position as the superior court. *Brighton v. Dep't of Transp.*, 109 Wn. App. 855, 861-62, 38 P.3d 344 (2001). We limit our review to the record of the Board, not that of the trial court. *Id.*

 ¶11 The Board's decision is prima facie correct under RCW 51.52.115, and a party attacking the decision must support its challenge by a preponderance of the evidence. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999). On review, the superior court may substitute its own findings and decision for the Board's only if it finds " 'from a fair preponderance of credible evidence' " that the Board's findings and decision are incorrect. *Id.* (internal quotation marks omitted) (quoting *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 390, 828 P.2d 1138 (1992)). Our review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings. *Id.* at 5-6; *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996). Here, the superior court affirmed the board decision and adopted the board findings and conclusions.

## II. Officer Allen's Employer

¶12 Merlino and the City dispute which party was Officer Allen's employer at the time of the injury.[3] " 'For purposes of workmen's compensation, an employment relationship exists only when: (1) the employer has the right to control the servant's physical conduct in the performance of his duties, and (2) there is consent by the employee to this relationship.' " *Bennerstrom v. Dep't of Labor & Indus.*, 120 Wn. App. 853, 859, 86 P.3d 826 (2004) (quoting *Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 553, 588 P.2d 1174 (1979)).

### A. Control Prong

¶13 The hallmark of an employment relationship is the employer's right to control the employee's conduct. *Judy v. Hanford Envtl. Health Found.*, 106 Wn. App. 26, 35, 22 P.3d 810 (2001). In determining whether such a right to control exists, we may examine the following factors: (1) who controls the work to be done, (2) who determines the qualifications, (3) who sets pay and hours of work and issues paychecks, (4) who has day-to-day supervision responsibilities, (5) who provides work equipment, (6) who directs what work is to be done, and (7) who conducts safety training. *Bennerstrom*, 120 Wn. App. at 863.

### 1. Control of the Work

¶14 Merlino argues that it had no authority to control how Officer Allen performed traffic control, and that any discretion as to how to control traffic was up to Officer Allen or to the City. Traffic laws undoubtedly prescribe how traffic should be managed. Officer Allen was bound to

---

[3] Merlino argues it is possible for Officer Allen to be deemed an independent contractor, employed by neither Merlino nor the City. But, as both the Department and the City agree, neither the Board nor the superior court addressed this issue, nor did the City ever argue below that Officer Allen was a covered independent contractor. We decline to review this argument. It was waived under RAP 2.5(a) and RCW 51.52.104 because it was not raised below.

follow those laws and to exercise professional judgment in doing so. This circumstance is not different from that of other licensed professionals bound to follow legal requirements and exercise professional judgment in the course of their professional duties, independent from contrary direction of nonprofessionals. But, while Merlino lacked authority to compel Officer Allen to act contrary to the law in performing traffic control, the record shows Merlino could direct the performance of his job in other ways. This is supported by the fact that right before the accident, supervisor Trudeau ordered Officer Allen to go back to the intersection and direct traffic. Officer Allen complied even though he did not personally believe he was needed in the intersection at that time. Merlino also had the right to terminate Officer Allen if it was dissatisfied with the manner in which he performed.

¶15 The Department, splitting time at oral argument with Merlino, conceded that it is not the city rule requiring the use of an off-duty officer that is the predicate for arguing the City is the employer. Rather, the Department argues that law enforcement officers are on-duty 24 hours a day, seven days a week. Therefore, they are always at work for their department when performing law enforcement duties, especially when in the Department's uniform. The Department asserted that if an off-duty police officer from another jurisdiction, like the city of Renton, had been hired instead of Officer Allen, the city of Renton, not Seattle, would be the employer of that officer for workers' compensation purposes. The Department suggests this would be true even if the officer was off-duty, the work was clearly outside Renton's jurisdiction, Renton had no knowledge of the work being done, and Seattle's laws were being enforced. We reject such a rule.

¶16 The Department contends off-duty officers remain city employees because they are subject to the SPD's policies and to the threat of discipline from the SPD. The Department points to the City's requirement that off-duty

officers file a secondary work permit, indicating the specific date, time, location, nature of the work, and name of the contractor. Off-duty work was neither required nor prohibited. The failure to file a work permit may have exposed the officer to discipline. But, the record does not suggest that the fact of off-duty work was subject to discipline or supervision. Here, neither Boone-Jakobsen nor Officer Allen filed such a secondary work permit for the work at issue. The City thus had no way of knowing that Officer Allen was working off-duty in this case and no way of exerting control over his work for Merlino. Officer Allen obtained the job through Boone-Jakobsen, but she was not acting on behalf of the SPD, the guild, or the City. She was responsible for negotiating and setting Officer Allen's wage rate with Merlino. And, prior to this litigation, the SPD had no knowledge that Boone-Jakobsen engaged in this coordinating business. SPD's work permit policies do not amount to control of Officer Allen during off-duty employment.

¶17 The Department argues that the work of traffic control is for the benefit of the City rather than Merlino. Here, the City provides for public safety by establishing the requirement for traffic control at construction sites. Off-duty work by an officer involving traffic control at a construction site does contribute to public safety. But, the primary purpose served by the officer is to meet the legal obligations of the contractor.

¶18 Merlino and the Department also urge the application of the lent employee doctrine.[4] Under the doctrine, when an employer lends an employee to another party, that party becomes liable for workers' compensation if (1) the employee has made a contract of hire, express or implied, with the second employer; (2) the work being done is essentially that of the second employer; and (3) the second employer has the right to control the details of the work. 3 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPEN-

---

[4] The lent employee doctrine is also known as the loaned, or borrowed, employee doctrine.

SATION LAW § 67.01[1] (2011). They argue that Officer Allen was performing duties that benefited the public and the City rather than Merlino. Therefore, he could not have been an employee of Merlino. We decline to apply this doctrine. It was not argued below. Were we to apply the doctrine, we would reject the assertion that the work performed was primarily that of the City and that Merlino was precluded from being Officer Allen's employer.

¶19 This factor weighs in favor of Merlino being in control.

### 2. Determining Qualifications

¶20 The broad qualifications of the position are set by the city ordinance and state law. To the extent the specific qualifications of the particular person hired to fill the position are evaluated, that would have been done by Merlino. Nothing in the record suggests such an evaluation occurred here, beyond the decision to hire.

¶21 This factor weighs in favor of Merlino being in control.

### 3. Pay Rate, Hours of Work, Payroll

¶22 Merlino set the pay rate. To the extent that the Seattle Police Guild established a pay rate floor for off-duty work, it has no bearing here. Merlino set the hours of work, filled out the time card, and handled the payroll.

¶23 This factor weighs in favor of Merlino being in control.

### 4. Day to Day Supervision

¶24 Merlino directed Officer Allen where and when to work on the day of the accident. However, the Department suggests the City and the SPD exert some control over their off-duty officers through visual monitoring. That argument is based on Assistant Police Chief Richard Reed's testimony that he and other supervising officers regularly drive around

during their workday, notice SPD employees that they see directing traffic, and perform a "visual checkoff" to ensure they are acting properly. The Department points to the fact that Reed has authority to intervene when SPD off-duty officers do not properly direct traffic and the fact that SPD occasionally takes complaints from the public about its officers' off-duty activities. But, Officer Reed testified that he does not make a point of driving around for that purpose, and such monitoring is sporadic. Any street or construction project that SPD officers do not happen to drive by will go unchecked, as will any off-duty officers that may happen to be working there. Thus, the Department's argument is unpersuasive.

¶25 The potential for an on-duty officer to drive by a construction site does not endow the City with control as an employer over off-duty officers working there. The SPD could similarly observe and intervene if the traffic control was being done by an off-duty officer from a jurisdiction outside of Seattle or by a nonofficer flagger. Such observation and intervention would be part of the regular SPD traffic enforcement, not an employment relationship.[5]

¶26 This factor weighs in favor of Merlino being in control.

### 5. Work Equipment

¶27 Officer Allen provided his uniform, badge, name tag, and firearm. The record does not indicate that any additional equipment beyond his SPD uniform was required or provided. The requirement that Officer Allen be in uniform for off-duty work was imposed by the city rule as part of the qualifications of the job for any off-duty officer, not just Seattle off-duty officers, serving as a flagger.

¶28 This factor weighs in favor of neither party being in control.

---

[5] This is also at odds with the Department's argument that a Renton off-duty officer would be a Renton employee while directing traffic for Merlino, rather than a Seattle employee.

### 6. Who Directs What Work To Be Done

¶29 Merlino was responsible for directing the employee where to go and explaining what work was to be done. This factor weighs in favor of Merlino being in control.[6]

### 7. Training

¶30 No training was provided to Officer Allen at or during his employment with Merlino. Providing general training necessary for a person to become qualified for a position, such as Officer Allen's training as a law enforcement officer, does not make the party providing that training the employer for worker's compensation purposes. *See Bennerstrom,* 120 Wn. App. at 859.

¶31 This factor weighs in favor of neither party being in control.

¶32 Weighing these factors, the record supports the findings of the Board:

> The standard plans for municipal construction, although specifying the use of a uniformed officer[,] did not compel the use of a Seattle police officer. The standard also specified that the officer be an off-duty officer. Although there is some benefit to the City of Seattle in avoiding confusion and possible vehicle accidents at these intersections, the primary benefit is to [Merlino]. As between [Merlino] and the City of Seattle, [Merlino] had the primary right to control all of the activities of Mr. Allen[,] who was working in an off-duty capacity and was

---

[6] The City, for its part, focuses particular attention on the fact that at the time of Officer Allen's injury, he was in the intersection on the express instruction of Trudeau, a Merlino superintendent. It also argues that, at the time of the injury, there was no reason for a police officer to be directing traffic in the intersection. It parses traffic control into two different categories. The first involves countermanding or standing in for a signal, which requires an off-duty officer, in accordance with the contract. The second involves all other flagging work, which can be done by an ordinary nonofficer flagger. The City contends that, because Officer Allen's work at the time of the accident was at Merlino's request and did not involve countermanding a signal, it did not require the use of an officer. Thus, he was not acting in the course of his law enforcement capacity and was not an employee of the City.

directed by employees of [Merlino] as to when and where he was to perform traffic control duties.

Merlino, not the City, had the right of control over Officer Allen while he was employed by Merlino for traffic control at its site.

### B. Consent Prong

¶33 The right of control is not the single determinative factor in Washington. *Novenson*, 91 Wn.2d at 553. A mutual agreement must exist between the employee and employer to establish an employee-employer relationship. *Id.* "Unlike the rules of vicarious liability at common law which focused on whether the 'master' accepted and controlled the activities of the 'servant' under the workman's compensation law, the focus is upon the employee or 'servant'." *Id.* " 'To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employer, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages.' " *Id.* at 554 (internal quotation marks omitted) (quoting *Fisher v. City of Seattle*, 62 Wn.2d 800, 805, 384 P.2d 852 (1963)). Such employee consent is the second prong to establish the employment relationship.

¶34 Officer Allen testified that he considered Merlino to be his employer on the day of the accident. The Department suggests Officer Allen's testimony is not dispositive: " 'A worker's bare assertion of belief that he or she worked for this or that employer does not establish an employment relationship.' " *Bennerstrom*, 120 Wn. App. at 859 (quoting *Jackson v. Harvey*, 72 Wn. App. 507, 519, 864 P.2d 975 (1994)). This is true, but Officer Allen's belief that Merlino was his employer was not merely a bare assertion. Instead, there was substantial objective support for his conclusion that it was Merlino, rather than the City, that was his employer. Officer Allen was not on duty as an SPD

officer, was not being paid by the City, was not assigned to the duty by his SPD supervisor, and was not required to do the work for Merlino as part of his SPD duties. He had not notified the City he was accepting the work. Merlino set his rate of pay and work hours, directed him where to carry out his traffic control duties, assigned him tasks throughout the day, and told him when he could leave the jobsite. Merlino supervisors filled out his time card at the end of the day. It was Merlino that paid him and issued his W-2 form. Officer Allen reported when told, worked where told and when told, and accepted payment from Merlino. The Board found: "Here it is clear that [Officer] Allen did consent to employment with [Merlino], and looked to [Merlino], not to the City of Seattle or Ms. Boone-Jakobsen[,] for his compensation." We conclude substantial evidence exists to conclude that Officer Allen consented to employment with Merlino.

¶35 Both the Department and Merlino next argue that Officer Allen did not consent to employment with Merlino or to relinquishing his employment status with the City, because doing so would result in an irrational relinquishment of his privilege of qualified immunity. But, as the City points out, this issue was not raised or addressed at the appeal before the Board or the superior court. We decline to consider this argument, in accordance with RAP 2.5(a) and RCW 51.52.104, based on the fact that it was not raised below.

¶36 We find that Merlino had the right of control over Officer Allen's performance of his duties and that Officer Allen consented to his employment by Merlino. Therefore, pursuant to *Bennerstrom,* we hold that Officer Allen was an employee of Merlino, not of the City, at the time of the accident.

¶37 We affirm.

ELLINGTON and SCHINDLER, JJ., concur.

Review denied at 175 Wn.2d 1003 (2012).