FILED
COURT OF APPEALS
DIVISION II

2015 FEB -3 AM 8: 55

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | No. 45033-0-II |
| Respondent, | |
| v. | |
| LYONS ENTERPRISES, INC. DBA JAN-PRO CLEANING SYSTEMS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Appellant Lyons Enterprises Inc., doing business as Jan-Pro Cleaning Systems (Lyons), appeals from the superior court's partial affirmance and partial reversal of the Board of Industrial Insurance Appeals' (Board) decision and order. Lyons sells janitorial franchises, and the superior court held that Lyons' franchisees were workers for the purposes of the Industrial Insurance Act (IIA), Title 51 RCW, and that Lyons was required to pay IIA premiums for all franchisees. Like the Board, we conclude that Lyons' franchisees without employees are workers covered by the IIA, but those franchisees who have employees do not come within the purview of the IIA. Remand to the Board is appropriate for a factual determination of which franchisees had employees. We do not reach the issue of equitable estoppel, we reject

amicus curiae International Franchise Association's (IFA) contracts clause claims, and we deny attorney fees. The superior court is affirmed in part and reversed in part.

## FACTS

Lyons is a distributor of Jan-Pro cleaning franchises. Lyons does not characterize itself as a "cleaning" business. Although customers enter into contracts with Lyons to clean their facilities, it is not Lyons that does the cleaning.[1] Rather, the cleaning is done by franchisees who have purchased from Lyons the right to participate in the "Jan-Pro System." Clerk's Papers (CP) at 23.

A franchisee becomes a part of the Jan-Pro System by entering into a contract with a regional distributor such as Lyons. Pursuant to this contract, a franchisee pays a franchise fee up front, a royalty for use of Jan-Pro's brands and methods, and management fees for Lyons' business support services. The royalties total 10 percent of the franchisee's gross billings and the management fees total 5 percent of billings. In practical terms, the more business a franchisee does, the more both the franchisee and Lyons benefit. Finally, the franchisee must enter a noncompete covenant for the duration of the Jan-Pro contract and for one year thereafter.

In return for these fees and commitments, a franchisee is permitted to use the Jan-Pro brand and trademarks in business and is instructed in Jan-Pro's proprietary cleaning procedure. The franchisee is also guaranteed a certain amount of gross billing. Lyons solicits clients, negotiates and enters into cleaning contracts, and bills clients on behalf of its franchisees. Lyons does these acts for the benefit of franchisees who lack experience in administering a business. If a franchisee

---

[1] Lyons has seven full-time employees, none of whom work as cleaners. Lyons has about 100 franchisees.

2

solicits a customer itself, the customer must sign a contract with Lyons, and the cleaning contract becomes Lyons' property.

All franchisees are organized as independent businesses—they carry their own business licenses and insurance and pay IIA premiums for their own employees if they have them. Franchisees also bear the risk of loss in the event a customer fails to pay. A franchisee is free to reject a cleaning contract, in which case Lyons will provide the franchisee with a replacement account in order to maintain the guaranteed amount of gross billing. Lyons may remove a franchisee from a cleaning contract, but if Lyons does so for a reason other than franchisee misconduct,[2] then Lyons must provide the franchisee with a replacement account. A franchisee can only be terminated from the Jan-Pro System for cause.

Before they can do any work, new franchisees are required to complete 30 hours of training over 5 weeks. The training includes cleaning techniques and safety procedures as well as how to run a business and deal with customers. Franchisees must also comply with a 422-page training manual on Jan-Pro cleaning techniques, a 200-page safety manual, and a 100-page policies and procedures manual. In order to evaluate franchisees' compliance, Lyons periodically audits its customers. But Lyons does not supervise its franchisees during the actual cleaning nor does it send its own personnel to the job site.

Franchisees can hire and fire their own subordinates with no input from Lyons, although the contract specifies that the franchisee's employees must be "qualified and competent." CP at

---

[2] "Franchisee Misconduct" is defined as "faulty workmanship, untrustworthiness, dishonesty, providing services in a manner unsatisfactory to one or more Customers, or otherwise defaulting under this Agreement or its service contract with the Customer." CP at 318.

328. Franchisees are responsible for training their own subordinates. About 80 percent of Lyons' franchisees receive assistance from an employee or spouse. The contract is silent as to whether franchisees are required to perform any cleaning work themselves.[3]

Finally, franchisees are subject to various conditions in the course of their relationship with Lyons. Any advertising the franchisee does must be approved by Lyons. The franchisee must have Lyons' permission to transfer or sell the franchise. The franchisee supplies its own equipment and materials, but those must be obtained "solely from manufacturers and suppliers, and in accordance with specifications, that [Jan-Pro] authorizes in writing." CP at 328.

## PROCEDURAL HISTORY

In 2005, Labor & Industries (L&I) audited Lyons and assessed IIA premiums for two of its franchisees. L&I reasoned that these two franchisees "did not meet the criteria for independent contractor under RCW 51-[08]-180 and 51-[08]-195" (CP at 876) because they did not have a valid UBI,[4] and as a result, they were workers for IIA purposes. Lyons understood this audit to mean that most of its franchisees were not covered workers and were not subject to IIA premiums. In reliance on this understanding, Lyons expanded its territory and entered into numerous additional franchise agreements.

In 2010, L&I audited Lyons again. This second audit found that 18 franchisees were not workers because they employed workers of their own. But the remaining franchisees were covered

---

[3] The only obligations that the franchisee bears in his or her *individual* capacity are to complete the training program, supervise the franchise in its day-to-day operations, and "devote his or her best efforts to managing and operating the Franchised Business." CP at 329.

[4] UBI is short for "unified business identifier," a number used to identify a business registered or licensed with one or more state agencies. WAC 308-320-030(14).

workers and did not qualify for the exception described in RCW 51.08.195. L&I reached this conclusion because these franchisees were not "free from direction and control." CP at 1640. The audit found that Lyons had the right to control how work results were achieved, noting that "exempt independent contractors ordinarily use their own methods. [Lyons'] extensive training program signifies the opposite." CP at 1639. The audit further found that because Lyons negotiated the cleaning contracts, it had "control over [franchisees'] opportunity for profit or loss." CP at 1640. The audit also noted that Lyons owned the customer accounts and charged the franchisees various fees. Finally, the audit found that "Lyons Enterprises' business arrangements with the individuals indicate the expectation that the relationship will continue indefinitely, rather than for a specific project or period. This is generally considered evidence that the intent was to create an employer-worker relationship." CP at 1640. Ordinarily, Lyons would have owed $149,583.94 in back premiums. But the 2010 audit was "completed with an educational focus only" and merely required Lyons to begin reporting and paying IIA premiums on its covered workers going forward. CP at 1641 (capitalization omitted).

Lyons requested reconsideration of the 2010 audit. Jerold Billings, a litigation specialist for L&I, determined that Lyons was responsible for IIA premiums for *all* of its franchisees, including the 18 who had their own workers. At an administrative law hearing, Billings testified that L&I had not changed its position since the 2005 audit. Rather, the auditor "made a mistake" and "didn't look at the franchise fully." CP at 2255-56.

Lyons appealed to the Board. After hearing testimony, Industrial Appeals Judge Wayne B. Lucia issued a proposed decision and order concluding that none of Lyons' franchisees were covered workers.

L&I appealed to a three-member panel of the Board. The Board subsequently issued a final decision and order adopting the position of the 2010 audit—that those franchisees with their own workers were exempt, but the remaining franchisees were covered workers.

Both Lyons and L&I appealed the Board's decision, and the administrative law review was consolidated in the Pierce County Superior Court. The superior court held that all of Lyons' franchisees were covered workers. Accordingly, it affirmed the Board in part and reversed it in part. Lyons timely appealed the superior court order.

## ANALYSIS

The IIA requires employers to report and pay workers' compensation premiums for all of their workers. Ch. 51.16 RCW. Therefore, the dispositive question in this case is whether Lyons' franchisees are "workers," as that term is defined under the IIA.[5] To answer that question, we rely on two subsections: RCW 51.08.180, which defines the term "worker," and RCW 51.08.195, which contains exceptions to RCW 51.08.180. A franchisee that meets the test described in RCW 51.08.180, and *does not* meet the test described in RCW 51.08.195, is Lyons' "worker," and Lyons must pay IIA premiums for that franchisee.

---

[5] This inquiry "involves a different analysis than whether the individual is an employee" as that term is understood in the common law. *Xenith Group, Inc. v. Dep't of Labor & Indus.*, 167 Wn. App. 389, 401, 269 P.3d 414 (2012); *see also Daniels v. Seattle Seahawks*, 92 Wn. App. 576, 584, 968 P.2d 883 (1998), *review denied*, 137 Wn.2d 1016 (1999). A covered worker may be an employee *or* an independent contractor so long as the statutory test is met. *Norman v. Dep't of Labor & Indus.*, 10 Wn.2d 180, 183, 116 P.2d 360 (1941); *White v. Dep't of Labor & Indus.*, 48 Wn.2d 470, 474, 294 P.2d 650 (1956); *Jamison v. Dep't of Labor & Indus.*, 65 Wn. App. 125, 130, 827 P.2d 1085 (1992). That is, it makes no difference whether Lyons' franchisees are considered employees or independent contractors.

As we explain below, RCW 51.08.180 is properly read to mean that all franchisees of Lyons are "workers" *except* for those franchisees who have subordinates of their own. Furthermore, the RCW 51.08.195 exception does not apply to the "workers" Lyons maintains.

## I. STANDARD OF REVIEW

The Administrative Procedure Act, ch. 34.05 RCW, governs judicial review of a Board decision. RCW 51.48.131; *R&G Probst v. Dep't of Labor & Indus.*, 121 Wn. App. 288, 293, 88 P.3d 413, *review denied*, 152 Wn.2d 1034 (2004). On review, we occupy the same position as the superior court, and our review is limited to the certified agency record. *Xenith Group, Inc. v. Dep't of Labor & Indus.*, 167 Wn. App. 389, 393, 269 P.3d 414 (2012). We must reverse if the agency erroneously interprets or applies the law, the order is not supported by substantial evidence, or the order is arbitrary and capricious. RCW 34.05.570(3)(d), (e), (i). As the party challenging the Board's decision, Lyons has the burden to show that one or more of these criteria were satisfied. RCW 51.48.131; RCW 34.05.570(1)(a); *R&G Probst*, 121 Wn. App. at 293.

An agency's interpretation or application of the law is reviewed de novo. *Xenith Group*, 167 Wn. App. at 393-94. That said, the IIA is a remedial statute and we must construe it liberally "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." *Johnson v. Tradewell Stores, Inc.*, 95 Wn.2d 739, 743, 630 P.2d 441 (1981) (quoting RCW 51.12.010). In interpreting the statute, all doubts will be resolved in favor of the worker. *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

The agency's findings of fact are reviewed for substantial evidence. RCW 34.05.570(3)(e). This means that the court will "view the evidence and its reasonable inferences in the light most

favorable to the prevailing party in the highest forum that exercised fact-finding authority." *Johnson v. Dep't of Health*, 133 Wn. App. 403, 411, 136 P.3d 760 (2006). But if a conclusion of law is labeled as a finding of fact, then it will be treated as a conclusion of law and reviewed de novo. *Dep't of Labor & Indus. v. Mitchell Bros. Truck Line, Inc.*, 113 Wn. App. 700, 704-05, 54 P.3d 711 (2002).[6]

## II. RCW 51.08.180 – DEFINING WORKERS

Lyons argues that its relationship with its franchisees is not one of employer and worker but rather a bilateral contract between two independent businesses. Essentially, Lyons claims that it is a separate entity from each of its franchisees and that the franchise agreement establishes the terms of their business relationship. Lyons argues that its franchisees are not workers because they can and do hire their own employees to do the work, meaning that their contracts with the franchisees are not for personal labor. L&I argues that Lyons' franchisees are covered workers because the franchisees serve a function that is indistinguishable from the function that an employee in a traditional cleaning service would perform. Lyons is partially correct—we hold that those franchisees who *actually* take on their own subordinates are not covered workers, but those franchisees who work alone are covered under the IIA. We affirm the superior court in part, reverse the superior court in part, and reinstate the Board's decision.

---

[6] For instance, in *Mitchell Bros.*, an industrial insurance judge entered a finding of fact that certain lease-operators were "workers" because they "owned" the vehicles they leased as that term is used in RCW 51.08.180(1). 113 Wn. App. at 704. Because the finding that the operators were "workers" turned on the *legal* conclusion that the workers satisfied a statutory criterion, this court applied de novo review. *Mitchell Bros.*, 113 Wn. App. at 705.

The IIA is meant to provide broad workers compensation coverage. *See* RCW 51.12.010 ("it is the purpose of this title to embrace *all* employments") (emphasis added). In keeping with that goal, RCW 51.08.180 defines a worker as

> *every* person in this state who is engaged in the employment of . . . or who is working under an independent contract, *the essence of which is his or her personal labor for an employer.*

(Emphasis added.) The "essence" of a contract means "the gist or substance, the vital sine qua non, the very heart and soul of his contract." *Haller v. Dep't of Labor & Indus.*, 13 Wn.2d 164, 168, 124 P.2d 559 (1942). What services a contractor provides is a question of fact. But "whether these services constitute 'personal labor' . . . is a question of law." *Silliman v. Argus Servs., Inc.*, 105 Wn. App. 232, 236, 19 P.3d 428, *review denied*, 144 Wn.2d 1005 (2001). In determining whether work is personal labor, we "look to the contract itself, the work, the parties' situation, and other concomitant circumstances." *Silliman*, 105 Wn. App. at 236-37; *see also Mass. Mut. Life Ins. Co. v. Dep't of Labor & Indus.*, 51 Wn. App. 159, 163, 752 P.2d 381 (1988). Furthermore, in deciding whether Lyons' franchisees performed personal labor, we are guided by the Supreme Court's test in *White v. Department of Labor & Industries*, 48 Wn.2d 470, 294 P.2d 650 (1956).

## A. REALITIES OF THE SITUATION

In determining whether independent contractors are workers, we look to the "'realities of the situation.'" *Dep't of Labor & Indus. v. Tacoma Yellow Cab Co.*, 31 Wn. App. 117, 124, 639 P.2d 843 (quoting *Ancheta v. Daly*, 77 Wn.2d 255, 263, 461 P.2d 531 (1969)), *review denied*, 97 Wn.2d 1015 (1982). There, the appellant companies leased taxi cabs to independent contractors on a per-mile payment scheme, subject only to the proviso that "[t]he taxi cab shall not be operated by any person except by the Lessee or his regular employees." *Tacoma Yellow Cab*, 31 Wn. App.

9

at 123. Like Lyons, the appellants argued that their relationship with the taxi drivers was merely one of lessor and lessee not employer and worker. We disagreed, holding that the "independent lease contract" was actually "a method to place taxis and drivers on the city streets of Tacoma to carry passengers at rates which are established by local ordinances." *Tacoma Yellow Cab*, 31 Wn. App. at 124. The lessee drivers performed the same function as employees because "[t]hey contribute[d] nothing to the contract except their personal labor." *Tacoma Yellow Cab*, 31 Wn. App. at 124.

Like the taxi leases in *Tacoma Yellow Cab*, the franchise agreements between Lyons and its franchisees serve as a method to clean facilities for customers. Customers enter into cleaning contracts with Lyons not the individual franchisees. The essence of these cleaning contracts is that through someone's "labor," the end customer's facility is made clean. The question then becomes whether this labor is "personal." In order to answer that question, we turn to the Supreme Court's *White* test.

## B. DELEGATION OF CONTRACT DUTIES – THE *WHITE* TEST

Our Supreme Court has enumerated three types of contractors who will *not* be covered:

> (a) [Those] who must of necessity own or supply machinery or equipment (as distinguished from the usual hand tools) to perform the contract . . . or (b) who obviously could not perform the contract without assistance . . . or (c) who of necessity or choice employs others to do all or part of the work he has contracted to perform.

*White*, 48 Wn.2d at 474. Lyons does not argue that its franchisees owned or supplied specialized machinery or equipment or that its franchisees could not have performed the cleaning contracts without assistance. Therefore, only the third prong is at issue here.

10

Lyons argues that the third prong of *White* is satisfied so long as the contractor has the *right* to hire subordinates whether or not the contractor *actually* does so. *See Mass. Mut.*, 51 Wn. App. at 165 (no coverage where "the contracting parties *contemplated* the delegation of duties by the independent contractor") (emphasis added). In Lyons' view, the word "personal" in the statute means just that—a person is a worker only if the contract demands the labor of that specific person and *no one else. See Cook v. Dep't of Labor & Indus.*, 46 Wn.2d 475, 477, 282 P.2d 265 (1955) ("Labor that may be done by others under the contract is not *personal*, as the word is used in the statute."), *overruled by White*, 48 Wn.2d 470; *Crall v. Dep't of Labor & Indus.*, 45 Wn.2d 497, 499, 275 P.2d 903 (1954) (same), *overruled by White*, 48 Wn.2d 470. Our Supreme Court has specifically rejected that reading of the statute holding that the language of *Cook* and *Crall* was "too broad" and that the IIA was meant to encompass more than "those extremely rare cases in which the party for whom the work is done requires the personal services of the independent contractor and is unwilling that any part of the work be done by someone else." *White*, 48 Wn.2d at 473-74.

When the Supreme Court rejected *Cook* and *Crall*, it made clear that the third prong of *White* must be read literally—a contractor is excluded if he or she *actually* "employs others" not if he or she *may* at some point employ others. We have never held that the *hypothetical* right to delegate, standing alone, removed a contractor from the purview of RCW 51.08.180. To the contrary, we have held that contractual permission to delegate is "not in itself dispositive" of whether the contractor supplies personal labor. *Jamison v. Dep't of Labor & Indus.*, 65 Wn. App. 125, 133, 827 P.2d 1085 (1992).

11

And in the cases which Lyons relies on, the contractors in question *actually* employed subordinates. *See Mass. Mut.*, 51 Wn. App. at 165 ("agents may *and do* delegate significant portions of their duties to others") (emphasis added); *see also Silliman*, 105 Wn. App. at 237 ("Argus *employed* others to do all of the security work") (emphasis added); *In re James D. Shanley & Wife, dba, Nw. Mut. Life Ins. Co.*, No. 870485, 1988 WL 169377, at *3, Bd. of Indus. Ins. Appeals (Wash. Sept. 8, 1988) ("individual agents can *and do* employ others to perform at least part of the contract to sell insurance").

But the superior court's decision went further, holding that even those franchisees who *did* employ their own subordinates were covered workers. This decision contravenes the Supreme Court's plain holding in *White* that a contractor who "employs others to do all or part of the work he has contracted to perform" is not covered by the IIA. 48 Wn.2d at 474. Just as a literal reading of *White* forecloses Lyons' legal theory, a literal reading of *White* also shows that the superior court erred. Although *Jamison* may be read to support the superior court's holding, we do not read *Jamison* so broadly.[7] In *Jamison*, the court noted that although there "was some evidence suggesting that one or two of the timber fallers may have had part-time employees helping them with the contract," it was not clearly erroneous for the Board to find that Jamison's independent contractors were "workers" within the meaning of the act. 65 Wn. App. at 133. We conclude this language from *Jamison* is too equivocal to retreat from *White*'s clear mandate that a contractor who employs others is not covered by the IIA.

---

[7] In *Jamison*, we noted that in *Tacoma Yellow Cab*, we had held that workers were covered despite having their own subordinates. 65 Wn. App. at 133. But nowhere in *Tacoma Yellow Cab* does it say that the taxi drivers in question actually had subordinates.

Applying the third prong of *White*, the Board has consistently declined to find contractors covered where they employed subordinates of their own to do some or all of the contract work. *See In re Mica Peak Constr. LLC*, No. 11 21880, 2013 WL 1558338, Bd. of Indus. Ins. Appeals (Wash. Jan. 15, 2013); *In re Alliance Flooring Serv., Inc.*, No. 03 32294, 2005 WL 2386288, Bd. of Indus. Ins. Appeals (Wash. June 13, 2005); *In re Heartland Indus. Inc.*, No. 04 13149, 2005 WL 1075898, Bd. of Indus. Ins. Appeals (Wash. Jan. 10, 2005); *In re Millennium Exteriors, LLC*, No. 02 11265, 2003 WL 22696992, Bd. of Indus. Ins. Appeals (Wash. Sept. 9, 2003); *In re John B. Strand et ux dba Strand Enters.*, No. 93 2772, 1994 WL 396526, Bd. of Indus. Ins. Appeals (Wash. June 27, 1994); *In re James D. Shanley & Wife*, 1988 WL 169377; *In re Charles G. French*, No. 58223, 1982 WL 20480, Bd. of Indus. Ins. Appeals (Wash. May 26, 1982).[8] We agree. If a franchisee works alone, then he or she is *necessarily* exerting personal labor. However, if a franchisee employs his or her own subordinates to aid in the cleaning, then the franchisee is necessarily contributing more to the contract than his or her *personal* labor—the franchisee is contributing the labor of his or her *subordinates*.

Under *White*, those franchisees who employ subordinates are excluded from the IIA as a matter of law. Here, Lyons' franchisees are free to hire subordinates, and many do. *See* CP at 24 ("Approximately 80 percent of the franchisees have employees or assistants, helping them service the . . . cleaning contracts."). The Board did not err by finding that these franchisees were not

---

[8] While administrative decisions are not binding on this court, we recognize significant decisions of the Board as persuasive authority in interpreting the IIA. *O'Keefe v. Dep't of Labor & Indus.*, 126 Wn. App. 760, 766, 109 P.3d 484 (2005), *review denied*, 156 Wn.2d 1003 (2006).

"workers."[9] Accordingly, we reverse the superior court and reinstate the Board's decision as to the franchisees who had subordinates only.

On the other hand, those franchisees that do not employ subordinates are "workers" and as to them, we affirm the superior court. Below, we address Lyons' argument that these "workers" are excluded from the purview of the IIA by statute.

### III. RCW 51.08.195 EXCEPTION

Lyons argues that the franchisees were "free from control or direction over the performance of the service" as required by RCW 51.08.195(1), and "customarily engaged in an independently established trade, occupation, profession, or business" as required by RCW 51.08.195(3) and, thus, are excepted from being considered workers. Because the franchisees are not independently established businesses, the statutory exception is inapplicable.

A contractor who would otherwise be a covered worker may be excluded from the purview of the IIA if he or she meets all six conditions. RCW 51.08.195. Our focus is on the third condition:

> The individual is customarily engaged in an independently established trade, occupation, profession, or business, of the same nature as that involved in the contract of service, or the individual has a principal place of business for the business the individual is conducting that is eligible for a business deduction for federal income tax purposes.

RCW 51.08.195(3). All six subparts must be satisfied for the exception to apply—a contractor who does not meet *any* one of these conditions is a "worker" for IIA purposes. *Malang v. Dep't*

---

[9] Although the Board's finding that some franchisees were not "workers" is labeled as a finding of fact, it is properly analyzed as a conclusion of law because it depends on whether the workers rendered personal labor. *Silliman*, 105 Wn. App at 236. But the Board's conclusion is supported even on de novo review.

*of Labor & Indus.*, 139 Wn. App. 677, 689, 162 P.3d 450 (2007). Because the franchisees do not satisfy subpart (3), they do not qualify for the statutory exception.

Subpart (3) requires that the contractor be "customarily engaged in an independently established trade, occupation, profession, or business, of the same nature as that involved in the contract of service, or the individual has a principal place of business for the business the individual is conducting that is eligible for a business deduction for federal income tax purposes." RCW 51.08.195(3). Lyons does not argue that its franchisees have principal places of business that are eligible for a business deduction, only that the franchisees are customarily engaged in an independently established business. In the unemployment compensation context,[10] the language "customarily engaged in an independently established business" means that the contractor's enterprise must be "'created and existing separate and apart from the relationship with the particular employer, an enterprise that will survive the termination of that relationship.'" *All-State Constr. Co. v. Gordon*, 70 Wn.2d 657, 666, 425 P.2d 16 (1967) (quoting *Baker v. Cameron*, 240 Or. 354, 365, 401 P.2d 691 (1965)).

Here, the franchisees' businesses are intimately tied to their relationship with Lyons. The Board found, and Lyons does not challenge, that "most [franchisees] purchased their contracts for extra income, and were not in the commercial cleaning business prior to that purchase." CP at 28. Therefore, the franchisees' businesses were not created "separate and apart" from their franchise agreement with Lyons. Nor will their businesses survive the termination of the franchise

_____

[10] While the unemployment compensation system relies on a different statute, the unemployment compensation statute is similar to the IIA in that it is a remedial act that is liberally construed. RCW 50.01.010.

agreement—to the contrary, franchisees *must* terminate their cleaning businesses when they cease to be Lyons' franchisees, as they are subject to a one-year noncompete agreement when they leave the business. Lyons' franchisees do not satisfy RCW 51.08.195(3), meaning that Lyons cannot claim the RCW 51.08.195 exception. The superior court was correct, albeit for different reasons.[11] We affirm the superior court on different grounds regarding the applicability of RCW 51.08.195.

Because the RCW 51.08.195 exception does not apply, the "personal labor" test articulated in RCW 51.08.180 and discussed above is dispositive. As the Board found, those franchisees that satisfied the RCW 51.08.180 test, i.e., those who lacked subordinates, are covered workers and Lyons must pay IIA premiums for these workers.

## IV. REMAND

Lyons requests a remand to determine which franchises *actually* employ their own subordinates to do the work. L&I argues that the Board's findings as to which franchisees had their own subordinates was supported by substantial evidence. We agree with Lyons.

The record contains conflicting evidence on how many of Lyons' franchisees employed subordinates. On one hand, the president of Lyons testified that 80 percent of the franchisees used employees or assistants. On the other hand, the auditor and the Board both found that only 18 franchisees "provided the labor of others" and were thus exempt from IIA coverage. CP at 191. Although we defer to the Board's findings of fact, there is significant reason to doubt the accuracy of L&I's estimates. L&I's auditor testified that he did not speak to any franchisees in the course

---

[11] The superior court correctly decided that the RCW 51.08.195 exception did not apply—but on the basis of RCW 51.08.195(1), held that Lyons "retained significant control and direction over the performance of franchisees." CP at 2398. The superior court did not reach RCW 51.08.195(3).

16

of the audit; rather, he relied on a questionnaire that only 49 out of 108 franchisees answered. Indeed, a number of franchisees who were not listed as exempt in the 2010 audit testified that they used employees or assistants in their work.

L&I argues that Lyons failed to name any specific franchisees (besides one, Sung Joo Lee) whom it understood to have employees.[12] This fact is not surprising because Lyons had no authority over the franchisees' hiring decisions. It should also be noted that Lyons offered testimony by a number of individual franchisees who might have been better able to indicate how many employees they had, but the court rejected this testimony as duplicative. We hold that the Board's decision that only 18 of the franchisees had subordinates was not supported by substantial evidence and remand for further fact-finding proceedings.

## V. ESTOPPEL

Lyons argues that even if we agree with L&I's interpretation of RCW 51.08.180 and .195, L&I should be estopped from assessing IIA premiums for the remaining duration of Lyons' franchise contracts. L&I argues that estoppel is inappropriate because Lyons could not have reasonably relied on the 2005 audit to mean that the franchisees were not covered workers. Because we remand to the Board for further determinations, we do not reach this issue because it is not yet ripe: the equities may change depending on the Board's findings.

---

[12] L&I also argues that Lyons waived any argument that the Board's findings were unsupported by substantial evidence. This is untrue—Lyons identified the challenged findings in its assignments of error.

## VI. CONTRACTS CLAUSE

IFA argues that L&I's change in position impaired Lyons' contracts with its franchisees in violation of the state and federal constitution. We agree with L&I that the State's purely internal change to its interpretation of a statute is not subject to the contracts clause.

U.S. Const., art. I, § 10 provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts," while Wash. Const., art. I, § 23 provides that "[n]o . . . law impairing the obligations of contracts shall ever be passed." These clauses are "coextensive and are given the same effect." *Pierce County v. State*, 159 Wn.2d 16, 27 n.5, 148 P.3d 1002 (2006); *see also Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 653, 854 P.2d 23 (1993).

As a threshold matter, the contracts clause can only be violated by a "law." *See Birkenwald Distrib. Co. v. Heublein, Inc.*, 55 Wn. App. 1, 6, 776 P.2d 721 (1989) ("However, only a Legislature can 'pass' a 'law' impairing contractual obligations."). But a plurality of our Supreme Court has implied that an agency's departure from a publicly distributed policy memorandum may have the "effect of impairing the obligations of . . . contracts." *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 890, 154 P.3d 891 (2007). Nevertheless, we found no published Washington decision that has applied the contracts clause to an agency's *internal* departure from its position in a prior enforcement action. Indeed, the United States Supreme Court has recognized that agencies may take an "evolutional approach" to their own policy positions. *Nat'l Labor Relations Bd. v. J. Weingarten, Inc.*, 420 U.S. 251, 265, 95 S. Ct. 959, 43 L. Ed. 2d 171 (1975). Here, unlike *Silverstreak*, L&I did not declare to the public that all franchisees would be exempt from IIA premiums or even that franchisees positioned similarly to Lyons would be exempt from IIA premiums. In short, IFA fails to point to a "law" that impaired Lyons' contracts.

18

Even if IFA could characterize L&I's internal policy shift as a "law" for contracts clause purposes, "[t]he prohibition against any impairment of contracts 'is not an absolute one and is not to be read with literal exactness.'"[13] *Tyrpak v. Daniels*, 124 Wn.2d 146, 151, 874 P.2d 1374 (1994) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428, 54 S. Ct. 231, 78 L. Ed. 413 (1934)). Rather, the threshold question is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978). "[I]mpairment is substantial if [Lyons] relied on the supplanted part of the contract, and contracting parties are generally deemed to have relied on existing state law pertaining to interpretation and enforcement." *Margola Assocs.*, 121 Wn.2d at 653. Yet, "a party who enters into a contract regarding an activity 'already regulated in the particular to which he now objects' is deemed to have contracted 'subject to further legislation upon the same topic.'" *Margola Assocs.*, 121 Wn.2d at 653 (quoting *Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark*, 310 U.S. 32, 38, 60 S. Ct. 792, 84 L. Ed. 1061 (1940)).

Workers compensation insurance is heavily regulated; the scope of the IIA is broad and its provisions are comprehensive.[14] RCW 51.12.010; *see also generally* ch. 51.12 RCW. The IIA has

---

[13] IFA cites only to cases involving *public* contracts that involve a different and more stringent standard. *Caritas Servs., Inc. v. Dep't of Soc. & Health Servs.*, 123 Wn.2d 391, 404, 869 P.2d 28 (1994); *Silverstreak*, 159 Wn.2d at 890; *Margola Assocs.*, 121 Wn.2d at 653.

[14] As IFA points out, the franchising industry is also subject to "onerous" regulation.

existed since 1911, *Laws of* 1911, ch. 74, and Lyons should have understood before it entered the business that it could be subject to changing workers compensation regulations. This is especially so because the case law has been far from unanimous on the IIA status of contractors.[15] *Compare, e.g., Tacoma Yellow Cab*, 31 Wn. App. 117, *with Mass. Mut.*, 51 Wn. App. 159. When Lyons imposed 10-year contract terms on its franchisees, it did so at the risk that the law could change during those 10 years. We reject IFA's contracts clause claims.

## VII. ATTORNEY FEES

Lyons argues that it is entitled to an award of attorney fees for this proceeding and the superior court proceeding should it prevail in this action. L&I argues that Lyons is not entitled to attorney fees even if Lyons prevails because L&I's position was substantially justified.[16] We agree with L&I.

---

[15] Amici point out that no published Washington decision has ever determined that franchisees are covered workers of their franchisors. That fact is not as important as amici believe it to be. What matters is the "essence of the *work* under the independent contract, not the characterization of the parties' relationship." *Dana's Housekeeping, Inc. v. Dep't of Labor & Indus.*, 76 Wn. App. 600, 607, 886 P.2d 1147, *review denied*, 127 Wn.2d 1007 (1995). As previously described, workers laboring under a variety of contracts have been found to be covered under the IIA. *See, e.g., Dana's*, 76 Wn. App. at 613; *Tacoma Yellow Cab*, 31 Wn. App. at 123-24. Amici point to no reason why franchise agreements should be treated any differently from other labor contracts.

[16] L&I also argues that Lyons waived attorney fees for the superior court proceeding by failing to request fees before the superior court. But Lyons could not have requested fees there because it did not prevail in that court.

The "Equal Access to Justice Act" (EAJA) requires a court to "award a qualified party[17] that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust." RCW 4.84.350(1). Here, Lyons has prevailed on the issue of whether those franchisees that had their own subordinates were exempt.

The question is whether L&I's position was substantially justified. A position is substantially justified if it could satisfy a "'reasonable person.'" *Silverstreak*, 159 Wn.2d at 892 (quoting *Moen v. Spokane City Police Dep't*, 110 Wn. App. 714, 721, 42 P.3d 456 (2002)). In the administrative context, this is a difficult standard to meet. An agency action may be manifestly unjust and still satisfy a reasonable person. *Silverstreak*, 159 Wn.2d at 889, 892-93. Even in *Massachusetts Mutual*, which Lyons relies on, the court concluded that the appeal was not frivolous: "[w]e have already noted that courts in other jurisdictions have found insurance agents covered by their respective workmen's compensation statutes." 51 Wn. App. at 166. Similarly, here, L&I's position cannot be said to be substantially unjustified. This case is highly complex, involving the intersection of detailed statutes with somewhat confused common law. L&I's position may not have been correct, but it was not untenable. Accordingly, we do not award fees under the EAJA.

---

[17] "'Qualified party' means (a) an individual whose net worth did not exceed one million dollars at the time the initial petition for judicial review was filed or (b) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization whose net worth did not exceed five million dollars at the time the initial petition for judicial review was filed, except that an organization described in section 501(c)(3) of the federal internal revenue code of 1954 as exempt from taxation under section 501(a) of the code and a cooperative association as defined in section 15(a) of the agricultural marketing act (12 U.S.C. 1141J(a)), may be a party regardless of the net worth of such organization or cooperative association." RCW 4.84.340(5). There appears to be no dispute that Lyons is qualified.

No. 45033-0-II

We affirm the superior court in part, reverse the superior court in part, and remand to the Board for a determination as to which of Lyons' franchisees employed subordinates to assist in cleaning.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MELNICK, J.