# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ZACKARY COURTOIS, | No. 49280-6-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| DEPARTMENT OF SOCIAL & HEALTH, SERVICES, | |
| Respondent. | |

BJORGEN, C.J. — This appeal involves the narrow issue of whether the superior court abused its discretion by declining to award attorney fees to Zackary Courtois under the Equal Access to Justice Act (EAJA), 5 U.S.C. 504.

From a young age, Courtois, due to his disabilities, received benefits from the Developmental Disabilities Administration (DDA), which is a part of the Department of Social and Health Services (Department). Upon reaching the age of 18, the Department determined that Courtois was no longer eligible for DDA benefits. Courtois appealed that decision to an administrative law judge (ALJ) and, subsequently, to the Department's Board of Appeals (Board). Both affirmed the Department's action.

On appeal to superior court, the Department's denial of benefits was reversed on two bases: first, that the Department had committed an error of law in interpreting and applying the dual diagnoses regulations, WAC 388-823-0720, -0740, and second, that substantial evidence did not support its finding that Courtois' adaptive skills test was not administered and evaluated by a qualified professional. Courtois then moved the superior court for an award of attorney fees under the EAJA. The superior court declined to award attorney fees because it determined that the Department's actions were substantially justified.

Courtois appeals the order denying EAJA attorney fees. He contends that the superior court abused its discretion because its prior determinations that the Department committed an error of law and that one of its findings was not supported by substantial evidence compelled the conclusion that the Department's position was not substantially justified.

We hold that the superior court did not abuse its discretion in denying attorney fees under the EAJA. Accordingly, we affirm.

FACTS

In 2002 Courtois began receiving services from DDA. In November 2014 DDA determined that Courtois no longer met DDA eligibility criteria to receive disability benefits. Katherine,[1] Courtois' mother, contested that determination, believing Courtois' recent autism diagnosis qualified him for DDA benefits.

To aid in setting out the remaining facts of the appeal, we first summarize the legal principles governing the benefits at issue.

---

[1] Because Katherine and Zachary have the same last name, we refer to Katherine by her first name. No disrespect is intended.

I. PERTINENT LAW

In order to qualify for DDA benefits, an individual must show that he or she has been diagnosed with an intellectual disability that "[r]esults in substantial limitations." *See* WAC 388-823-0015; WAC 388-823-0200. One such eligible condition is autism. *See* WAC 388-823-0500. In order to show that an individual's autism "[r]esults in substantial limitations," WAC 388-823-0015(1)(c), the individual must submit documentation showing (1) an adaptive skills test score of more than two standard deviations below the mean and (2) a Full Scale Intelligence Quotient (FSIQ) score of more than one standard deviation below the mean. *See* WAC 388-823-0510; *see* WAC 388-823-0210. The adaptive test "must be administered and scored by professionals who have a background in individual assessment, human development and behavior, and tests and measurements, as well as an understanding of individuals with disabilities." WAC 388-823-0740(1)(a).

The adaptive skills and FSIQ scores cannot be attributable to an unrelated "mental illness or other psychiatric condition occurring at any age; or other illness or injury occurring after age eighteen." WAC 388-823-0720, -0740. If an individual is "dually diagnosed" with a qualifying condition and other unrelated conditions, the individual must provide "acceptable documentation" that the qualifying condition, measured by the FSIQ and adaptive skills tests, would meet the requirements for DDA eligibility without the influence of the unrelated conditions. WAC 388-823-0720(2)(a), -0740(2)(a). "Acceptable documentation"

> means written reports or statements that are directly related to the subject at issue, reasonable in light of all the evidence, and from a source of appropriate authority. The determination of whether a document is acceptable is made by DDA.

WAC 388-823-0720 (2)(b), -0740(2)(b). "If no documentation is provided or DDA determines

that the documentation is not acceptable[,] DDA will deny eligibility. The determination may be

challenged through an administrative appeal." WAC 388-823-0720(2)(c), -0740(2)(c).

## II. HISTORY OF COURTOIS' DIAGNOSES

Throughout his life, Dr. Heather Sue Daniels was Courtois' primary doctor and

diagnosed him with a variety of conditions. Daniels diagnosed him with attention deficit

hyperactivity disorder (ADHD) in 2002 and "Static Encephalopathy secondary [due] to poor

early nutrition with failure to thrive" in 2004. Clerk's Papers (CP) at 296. In 2007, Daniels

stated that "as he grows older he seems to be coalescing into an Asperger Syndrome picture[,]"

and again diagnosed him with ADHD and static encephalopathy as well as about nine other new

conditions.[2] CP at 299.

In August 2013, when the Department was determining whether Courtois should continue

to receive DDA benefits, Daniels provided the following summary of Courtois' diagnoses over his

lifetime, classifying them under different developmental categories:

Early Childhood
    Failure to Thrive
    Static Encephalopathy with development delay

Mid Childhood
    ADHD
    Asperger's (Autism Spectrum Disorder)

New issues in the last two years
    Sleep Disorder
    Brain Tumor

---

[2] These other diagnoses include cognitive impairment, obsessive compulsive disorder, speech-language disorder, social learning disorder, sleep disorder, fine and gross motor dyspraxia, status post failure to thrive, status post gastroesophageal reflux disease, and small stature.

> Seizure Disorder
> Episodes of memory loss with seizures

CP at 315.

The Department asked Daniels to clarify Courtois' current diagnoses. In response, in December 2013, Daniels submitted the following diagnoses pertinent to Courtois' eligibility for DDA benefits:

1. Encephalopathy . . . (brain damage) from inadequate feeding in infancy, with seizure disorder and brain tumor
2. Autism Spectrum Disorder
3. Lack of Common Sense

*See* CP at 316.

In September 2014 Daniels completed a questionnaire and checklist, which implicitly continued to diagnose Courtois with autism spectrum disorder. However, she did not rule out encephalopathy, stating, "Zach's social communications are better explained by [autism] *than his other disabilities*." *See* CP at 191 (emphasis added).

### III. FSIQ AND ADAPTIVE SKILLS TESTS

In February 2013 Courtois received a neuropsychological evaluation, reflecting a FSIQ score of 80. This score was more than one standard deviation below the mean. *See* WAC 388-823-0510(2).

In April 2014 Courtois received an adaptive skills assessment. His mother, Katherine, provided the ratings of Courtois' adaptive skills. Brian Rice, a psychologist, scored and interpreted those ratings. Rice found that Courtois scored in the extremely low range of adaptive functioning and qualified as more than two standard deviations below the mean. WAC 388-823-0510(1).

IV. APPEALS PROCESS

In November 2014 the Department denied Courtois DDA benefits. Katherine contested this determination, believing that Courtois qualified for DDA services because of his autism diagnosis.

The matter went before an ALJ, who received testimony from witnesses and admitted numerous exhibits, establishing the facts discussed in Parts I-III above. In addition, Daniels testified that Courtois "only needs one . . . diagnosis . . . for his behavior stuff," which was "[a]utism spectrum disorder." CP at 528-29.

Among other rulings, the ALJ determined that Courtois did not qualify for DDA benefits because (1) Courtois failed to provide documentation that his 2013 FSIQ score was not influenced by unrelated conditions such as ADHD and (2) Courtois' April 2014 adaptive skills score was unreliable because Katherine, who did not qualify as a professional under WAC 388-823-0740(1)(a), provided the scores to Rice. Courtois appealed this decision to the Board.

The Board affirmed, agreeing with the ALJ that Courtois failed to provide documentation that his 2013 FSIQ score was not influenced by unrelated conditions. The Board reasoned that a prior evaluator, in 2002, had concluded that his ADHD influenced his FSIQ test, and that a separate neuropsychological evaluation stated that his February 2013 FSIQ test may have been influenced by other unrelated conditions. It also found that Daniels' testimony that Courtois was diagnosed only with autism

> does not overcome the need to show that other conditions did not have a disqualifying influence on the FSIQ score at the time the test was administered or the fact that it was not Dr. Daniels who administered the test and, thus, was not in a position to factually determine if the FSIQ score was unduly influenced by condition(s) other than Autism Spectrum Disorder at the time of the testing. . . . [T]he [FSIQ] score obtained in February 2013 and the date of this test precedes

> when Dr. Daniels was still dual diagnosing [Courtois] with other conditions in August 2013 and December 2013 (Encephalopathy with seizure disorder and brain tumor along with [autism], as well as noting a sleep disorder, a brain tumor, and seizures resulting in episodes of memory loss).

CP at 52-53 (footnote omitted).

For similar reasons, the Board concluded that Daniels' testimony was not "acceptable documentation" that Courtois' other diagnosed conditions at the time of the adaptive skills test did not have an appreciable effect on his score. The Board noted that Daniels did not administer the adaptive skills test, which made her unable to evaluate whether other conditions may have influenced the score.

The Board also concluded that the adaptive skills score was invalid because there was no evidence in the record that Katherine, who provided ratings of Courtois' skills, was a qualified professional under WAC 388-823-0740(1)(a).

Courtois moved for reconsideration, which the Board denied. The Board reaffirmed its rulings regarding the FSIQ and adaptive scores, highlighting that Courtois failed to provide "acceptable documentation," WAC 388-823-0720 (2)(b), -0740(2)(b), that demonstrated his other diagnoses did not contribute to his test score. CP at 9-10. However, in light of new evidence Courtois submitted, the Board withdrew its decision that the adaptive test was not administered by a qualifying professional under WAC 388-812-0740(1)(a). The Board implied that even if it agreed with Courtois that the adaptive test was appropriately administered and evaluated, its conclusions "regarding [Courtois'] failure to provide acceptable documentation based on the dual diagnosis" was dispositive. CP at 10.

Courtois appealed to the superior court. After a hearing,[3] the superior court reversed the Board's decision and found that Courtois was entitled to DDA benefits. It entered the following pertinent findings of fact and conclusions of law:

I. FINDINGS OF FACT

. . . .

1.4    Zackary's treating pediatrician[,] [Daniels,] determined that he meets the diagnostic criteria for ASD [autism spectrum disorder] in 2013. She no longer diagnoses Zackary with the multiple mental health conditions identified in early and mid-childhood. The new ASD diagnosis replaced those diagnoses. The doctor now attributes Zachary's social, behavioral, developmental, and cognitive deficits solely to his diagnosed ASD.

. . . .

1.6    The record on appeal also contained evidence that Mr. Courtois has a DDA-qualifying IQ score from testing conducted in February 2013, and a DDA-qualifying adaptive function score from testing conducted in April 2014. [Daniels] testified at the hearing that the cognitive and adaptive deficits demonstrated by his DDA-qualifying IQ and adaptive test scores are attributable to his ASD.

. . . .

1.8    The [Board] determined that the DDA eligibility rules governing "dually diagnosed" applicants apply in Zackary's case, and prevent the Department from accepting Mr. Courtois' otherwise qualifying IQ and adaptive test scores.

1.9    The [Board] also concluded that the record did not establish that the qualifying adaptive function testing in the record was properly "administered by a qualifying professional," as required by the Department's rules.

---

[3] The oral transcript of this hearing is not in the record.

## II. CONCLUSIONS OF LAW

. . . .

2.4     The DDA eligibility rules that govern the Department's review of IQ and adaptive test results of "dually diagnosed" applicants are WAC 388-823-0720(2) and WAC 388-823-0274(2).[4]   By their plain terms, the requirements in these rules apply only if an applicant is currently dually diagnosed with a qualifying developmental disability and a separate mental illness, or other psychiatric condition.  The evidence presented at hearing in this matter, including the testimony provided by [Daniels], establishes that Mr. Courtois' ASD diagnosis replaced his various childhood mental health diagnoses.  Since Mr. Courtois is not currently dually diagnosed with ASD and any other mental illness, the [Board]'s application of WAC 388-823-0720(2) and WAC 388-823-0274(2) in his case was an error of law.

2.5     The ASD diagnosis did not replace Mr. Courtois' medical diagnoses of seizure disorder and a sleep disorder.  However, the [Board]'s determination that these childhood medical diagnoses are dual diagnoses per WAC 388-823-0720(2) and WAC 388-823-0740(2) was an error of law.

2.6     The governing DDA eligibility rules require that qualifying adaptive testing must be "administered and scored" by a qualified professional.  WAC 388-823-0740(1)(a).  The [Board]'s determination that the qualifying adaptive function testing in this case was not properly "administered and scored" is not supported by substantial evidence in view of the record as a whole.

2.7     The record in this case establishes that Mr. Courtois meets every listed requirement for DDA eligibility in the Department's rules based on his diagnosed ASD, and his DDA-qualifying adaptive and IQ test scores.

CP at 622-25.

## V. DENIAL OF EAJA ATTORNEY FEES

After these rulings, Courtois moved the superior court for an award of attorney fees and

costs pursuant to the EAJA, arguing that the Department was not "'substantially justified'" in its

---

[4] WAC 388-823-0274(2) is not an actual regulation.  It appears that the superior court meant to reference WAC 388-823-0740(2).  Courtois, who proposed these findings of fact and conclusions of law to the superior court, made the same mistake in his trial brief.  Given the superior court's reasoning in its ruling, we interpret this regulation to be WAC 388-823-0740(2).

action. CP at 630 (quoting RCW 4.84.350(1)). The superior court disagreed and declined to award attorney fees, determining that the Department was "substantially justified" and had a "reasonable basis in law and fact" for its action. CP at 642.

In its oral ruling, the superior court specifically stated:

> Well, we can all agree, I expect, that the issue here is solely whether the Department's actions were substantially justified within the meaning of the statute. The outcome of the litigation, favorable to Mr. Courtois, it doesn't automatically follow that the Department's position was unreasonable and not substantially justified.
>
> I suppose it's a little bit easier to argue in hindsight, since the Court decided in favor of the petitioner, that the Department was not substantially justified. It's a little bit easier to argue that when the decision has gone the way of the petitioner.
>
> I disagree with Mr. Carlisle, that the arguments by the Department were difficult to make. The arguments made then and now, they don't seem to me that they were a reach. The arguments were made in good faith. They are very interesting issues in this case.
>
> The questions for the Court then were much closer questions than the petitioner now asserts. The legal answers for me were not obvious. I believe the Department's arguments then were fair under both the law and the facts.
>
> . . .
>
> I will deny the motion.

Report of Proceedings (RP) at 15-16.

Courtois appeals the superior court's determination that he was not entitled to an award of attorney fees under the EAJA.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a superior court's decision whether to award attorney fees under the EAJA for an abuse of discretion. *Raven v. Dep't of Soc. & Health Servs.*, 177 Wn.2d 804, 832, 306 P.3d

10

920 (2013). A superior court abuses its discretion when it makes a decision that is manifestly

unreasonable, or based on untenable grounds or reasons. *Id.*

## II. EAJA ATTORNEY FEES

A.    EAJA Legal Principles

Under the EAJA,

> a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust.

RCW 4.84.350(1). In this appeal, there is no dispute that Courtois is a qualified party or that he

ultimately prevailed on the merits. Instead, the only pertinent question is whether the superior

court's finding that the Department was "substantially justified" in its action was an abuse of

discretion.[5]

"'Substantially justified means justified to a degree that would satisfy a reasonable

person.'" *Raven*, 177 Wn.2d at 832 (quoting *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159

Wn.2d 868, 892, 154 P.3d 891 (2007)). Put another way, "an action is substantially justified if it

had a reasonable basis in law and in fact." *Id.* The agency action "need not be correct, only

reasonable." *Id.* (citing *Pierce v. Underwood*, 487 U.S. 552, 566 n.2, 108 S. Ct. 2541, 101 L. Ed.

2d 490 (1988)). We look to "the strength of the factual and legal basis for the action, not the

manner of the investigation and the underlying legal decisions." *Silverstreak*, 159 Wn.2d at 892.

---

[5] The superior court did not make a finding "that circumstances make an award unjust," the alternative basis for declining to award a prevailing party attorney fees under the EAJA. RCW 4.84.350(1).

"RCW 4.84.350(1) contemplates that an agency action may be substantially justified, even when the agency's action is ultimately determined to be unfounded." *Raven*, 177 Wn.2d at 832. Whether an agency action was taken in good faith is a consideration in determining whether an action was substantially justified. *See Constr. Indus. Training Council v. State Apprenticeship & Training Council of Dep't of Labor & Indus.*, 96 Wn. App. 59, 68-69, 977 P.2d 655 (1999). An agency action is not substantially justified if it was "arbitrary, willful, or capricious." *See Raven*, 177 Wn.2d at 833.

B.     Administrative Procedure Act Legal Principles

Washington's Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of an agency action. *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 547, 389 P.3d 731, *review denied*, 188 Wn.2d 1009 (2017). As pertinent, a superior court may reverse an agency action because the agency has erroneously interpreted or applied the law, WAC 34.05.570(3)(d), or the agency order is not supported by substantial evidence, WAC 34.05.570(3)(e).

Whether the Department "has 'erroneously interpreted or applied the law' . . . is reviewed under the error of law standard." *Beatty v. State Dep't of Fish & Wildlife Comm'n*, 185 Wn. App. 426, 443, 341 P.3d 291, *review denied*, 183 Wn.2d 1004 (2015). Under the error of law standard, a court may substitute its own judgment for that of the Department, although it must give substantial weight to the agency's view of the law it administers. *Id.* On the other hand, "[a]n agency order is supported by substantial evidence if there is a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order." *Johnson v.*

12

*State Dep't of Fish & Wildlife*, 175 Wn. App. 765, 772, 305 P.3d 1130 (2013) (internal quotation marks omitted).

C.      Substantial Justification

Courtois argues that the superior court abused its discretion in deciding that the Department's action was substantially justified because that decision is inconsistent with its earlier adverse rulings against the Department. In those rulings, the court found that (1) the Board committed an error of law and (2) its order was not supported by substantial evidence. For the following reasons, we disagree.

1.      Error of Law

The superior court concluded that the Board committed an error of law in its interpretation of the dual diagnoses rules, WAC 388-823-0720, -0740, the rules that require an individual's FSIQ or adaptive skills scores not be attributable to an unrelated condition. Specifically, the superior court determined that under their plain language the dual diagnoses rules only apply "if an applicant is *currently dually diagnosed* with a qualifying developmental disability and a separate mental illness or other psychiatric condition." CP at 624 (emphasis added). It further ruled that Daniels' testimony established that Courtois' more recent autism diagnosis replaced his other childhood diagnoses. Therefore, the superior court concluded that he was not "currently dually diagnosed," and that the Board's application of the dual diagnoses regulations was an "error of law." CP at 624-25.

As already noted, the propriety of the superior court's interpretation and application of the dual diagnoses rules, WAC 388-823-0720, -0740, is not before us. Instead, to determine whether the Department's position was substantially justified, we ask whether "it had a

13

reasonable basis in law and in fact," *Raven*, 177 Wn.2d at 832, and whether it was "arbitrary, willful, or capricious." *See Raven*, 177 Wn.2d at 833. We may also consider whether the Department's position was taken in good faith. *See Training Council*, 96 Wn. App. at 68-69.

The superior court found that the Department's determination was substantially justified because its arguments were not a "reach," were made in "good faith," and raised "very interesting issues" and "close[] questions" to the court. RP at 15-16. The court also stated that "[t]he legal answers for me were not obvious." RP at 15-16.

Courtois argues, though, that the Department's position could not be substantially justified because the superior court based its interpretation of the dual diagnoses rules on their plain language and implied that "[t]here was no ambiguous terminology, and no confused case law or conflicting statutory provisions." Br. of Appellant at 27. In support, Courtois distinguishes the present case from *Dep't of Labor and Industries v. Lyons Enterprises, Inc.*, 186 Wn. App. 518, 542, 347 P.3d 464 (2015), *aff'd*, 185 Wn.2d 721 (2016), where we declined to award EAJA attorney fees to the plaintiff. The *Lyons* court found that the Department was substantially justified in its interpretation of the Industrial Insurance Act, Title 51 RCW, because the case was "highly complex, involving the intersection of detailed statutes with somewhat confused common law." *Id.*

Even if not in a setting as complex as *Lyons*, the superior court's interpretation of the dual diagnoses rules involved the interplay of multiple provisions and subsections, as well as their applicability to a complicated set of facts. Further, the interpretation and application of the rules on this issue have not been addressed in an appellate decision. Most importantly, at the time of the February 2013 FSIQ test and April 2014 adaptive skills assessment, Courtois in fact

had multiple diagnoses. Apart from his autism, the Department was substantially justified in finding that his encephalopathy, for example, may have influenced those test scores. WAC 388-823-0720(2)(a), -0740(2)(a).

Courtois argues, however, that the APA standards for finding an error of law necessarily required that the superior court find that the Department's action was not substantially justified. Under the error of law standard, a reviewing court reviews de novo the "'meaning and purpose of a statute,'" but will accord "'great weight'" to a statute or regulation that falls within the agency's expertise. *See Puget Soundkeeper All. v. State, Pollution Control Hr'gs Bd.*, 189 Wn. App. 127, 136, 356 P.3d 753 (2015) (quoting *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*, 146 Wn.2d 778, 790, 51 P.3d 744 (2002)). Only if a rule's plain language "'remains susceptible to more than one reasonable meaning'" after consideration of all relevant statutory language is the statute ambiguous. *See id.* at 137 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002))

Thus, the superior court's finding of an error of law based on the plain language of the dual diagnoses rules necessarily requires that there was only "one reasonable meaning" to the rules. If there is only one reasonable meaning, it does seem, at first glance, inconsistent for the superior court to rule that the Department was still substantially justified in its position, i.e., that it has a "*reasonable* basis in law and fact" for its action. *Raven*, 177 Wn.2d at 832 (emphasis added).

However, the EAJA substantial justification standard also examines other factors, such as whether the agency proceeded in good faith or was arbitrary, willful, or capricious in its action. *Compare Training Council*, 96 Wn. App. at 68-69 *with Raven*, 177 Wn.2d at 833. Courtois does

not argue that the Department's action was arbitrary, willful, or capricious, and the superior court specifically found that the Department's reading of the dual diagnoses rules was in good faith. More importantly, at the time of the February 2013 FSIQ test and April 2014 adaptive skills assessment, Courtois had multiple diagnoses. Although found erroneous by superior court, it was not unreasonable or irrational for the Department to read the dual diagnosis rules, WAC 388-823-0720(2)(a) and -0740(2)(a), to apply to the time of the test.

Thus, even though the superior court found that the Department committed an error of law based on the plain meaning of the dual diagnoses regulations, we cannot say, under these circumstances, that the Department lacked a reasonable basis for its actions or that it acted arbitrarily, willfully, or capriciously. Thus, the superior court did not abuse its discretion in determining that the Department was substantially justified in its position.

2.      Substantial Evidence

The superior court also ruled that substantial evidence did not support the Board's finding that Courtois' April 2014 adaptive skills test was not properly administered and scored by a qualified professional. Courtois argues that this conclusion required the superior court to determine that the Department was not substantially justified in its action.

For his position, Courtois cites *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005) (quoting *Al-Harbi v. INS*, 284 F.3d 1080, 1085 (9th Cir. 2002)), which states that

> it will be only a "decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record."

We agree that based on the APA's governing standards for substantial evidence, this holding weighs in favor of finding that the Department was not substantially justified in its position.

16

*E.g.*, *Chandler v. State, Office of Ins. Comm'r*, 141 Wn. App. 639, 647-49, 173 P.3d 275 (2007) (outlining the deferential substantial evidence rules).

However, a court's determination that an agency finding was not supported by substantial evidence does not compel the determination that the agency's action was not substantially justified. In *Raven*, the main issue was whether substantial evidence supported the Department's finding of guardian neglect. 177 Wn.2d at 829-31. The superior court disagreed with the Department on the merits, and also awarded EAJA attorney fees to the guardian-plaintiff. *Id.* at 815, 831.

On appeal, our Supreme Court agreed with the superior court that the Department's finding of neglect was not supported by substantial evidence. *Id.* at 831. However, it found that the superior court had abused its discretion in awarding EAJA attorney fees to the plaintiff. *Id.* at 831-33. It found that the Department was substantially justified in its action because:

> Regardless of whether [the guardian's] conduct amounted to neglect, the record is clear that [she] exhibited several significant shortcomings as a guardian. More to the point, under the facts here, an agency would be reasonable in pursuing the same course of conduct that DSHS followed.

*Id.* at 833. The *Raven* court also noted its hesitation to uphold an EAJA award when there has been "no determination that [the Department]'s actions were arbitrary, willful, or capricious." *Id.* at 833. Under *Raven*, then, even if a finding is ultimately determined not to be supported by substantial evidence, the underlying agency action can still be substantially justified.

In the present appeal, the superior court determined that the Department's argument was "fair . . . under . . . the facts," "made in good faith," and presented "very interesting issues." RP at 15-16. Again, we are not in the position of examining the merits of whether the agency finding was supported by substantial evidence. Rather, we examine whether "it had a reasonable

basis in law and in fact," *Raven*, 177 Wn.2d at 832, and whether it was it was "arbitrary, willful, or capricious." *See Raven*, 177 Wn.2d at 833. We may also consider whether the Department's position was taken in good faith. *See Training Council*, 96 Wn. App. at 68-69.

WAC 388-823-0740(1)(a) states that adaptive skills tests "must be administered and scored by professionals who have a background in individual assessment, human development and behavior, and tests and measurements, as well as an understanding of individuals with disabilities." At the least, it was questionable whether Katherine had these qualifications. The ALJ, in fact, determined that "[a]ppellant provided an adaptive skills test administered not by a professional who has a background in individual assessment, as required by WAC 388-823-0740, but by his mother." CP 95. Against this background, the Department's determination that the adaptive skills test was not properly administered rested, at least, on a reasonable basis, even though it was subsequently overturned by the court. In addition, the superior court made no determination that the Department's action was arbitrary, willful, or capricious, or done in bad faith; nor does Courtois argue that it was.

Accordingly, we determine that the superior court did not abuse its discretion in determining that the Department was substantially justified in its actions.

### III. ATTORNEY FEES ON APPEAL

Courtois requests attorney fees on appeal pursuant to *Costanich v. Washington State Dep't of Soc. & Health Servs.,* 164 Wn.2d 925, 933–35, 194 P.3d 988 (2008), which held that a party shall be entitled up to $25,000 in attorney fees on appeal under the EAJA. RCW 4.84.350. However, attorney fees are available under RCW 4.84.350(1) only to prevailing parties. Because Courtois does not prevail on appeal, we decline to award him attorney fees.

No. 49280-6-II

CONCLUSION

The superior court did not abuse its discretion in declining to award Courtois attorney fees under the EAJA. Consequently, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
PORCH, C.J.

We concur:

_____
WORSWICK, J.

_____
JOHANSON, J.

19